THE WESTERN UNION TELEGRAPH COMPANY v. ERNESTINE SIMPSON.
No. 2547.

1. **Mental Anguish as Damages.**—Mental anguish may constitute an element of actual damage for which compensation may be recovered on a breach of contract where such anguish is the direct and natural result of the breach. When the mental anguish results from the breach of a contract for the payment of money no recovery can be had unless it be alleged and proved that the party contracting to make the payment was informed when he made the contract of the peculiar condition and circumstances of the party for whose benefit the contract was made.

2. **Telegraph Company Transmitting Money.**—A telegram was received at Galveston by the agent of a woman who sent the message from Los Angeles, California, on the twelfth of January, informing him of the fact that her husband had just died, that she would leave there at two o'clock next day, and requesting that he send two hundred dollars immediately. The message when received purported to have been sent from San Francisco. The message was not repeated. The agent of the woman expressed to the company's agent his belief that the woman sent the message from Los Angeles, and making application for the transfer of the money to San Francisco after being assured by the company's agent that no mistake had been made, delivered to the telegraph company the two hundred dollars and tolls for transferring it. The company's agents took no steps to inform themselves as to whether a mistake had been made in the name of the place from which the telegram was sent, but transferred the money to

San Francisco.  The woman failed to receive it, but two days afterwards her agent, after receiving a message from her over the wires of the same company from Los Angeles announcing that no money had been received, sent her by express the desired sum, the express company transmitting safely to Los Angeles by using the wires of the same telegraph company.  In an action for damages brought against the telegraph company by the widow, *held:*

1.  It is the duty of a telegraph company to write on a message transmitted by it the name of the place from which it was sent.

2.  If the application for the transfer of the money to San Francisco was made by the woman's agent on direction of the telegraph company's agent, after the agent of the woman had insisted on his belief that the message was really sent from Los Angeles, the company would be liable in damages.

3.  Fact Case.—See opinion for facts under which a verdict for $1000 was not deemed excessive.

APPEAL from Galveston.  Tried below before Hon. W. H. Stewart.
The opinion states the case.

*Wheeler & Rhodes,* for appellant. — 1.  The first special instruction asked by the defendant and refused by the court should have been given in charge to the jury.  The message sent by plaintiff from Los Angeles to Crossman & Simpson, Galveston, Texas, being an unrepeated message, without contract insuring its safe and accurate transmission and delivery, which contract the plaintiff had the option of making for a fair consideration had she elected so to do, it was proper that the jury should have had their attention called to the law governing this case and limiting the extent of the defendant's liability, and the refusal of the court to so instruct the jury is assigned as error by the defendant.  W. U. Tel. Co. v. Brown, 58 Texas, 170; Redpath v. Tel. Co., 112 Mass., 73; Grace v. Adams, 100 Mass., 507; Rice v. Dwight, 2 Cush. (Mass.), 87; W. U. Tel. Co. v. Andrew Neil, 57 Texas, 283; Grinnell v. Tel. Co., 113 Mass., 301–307.

2.  The evidence of plaintiff as well as that of defendant shows that R. A. Crossman, the plaintiff's agent, had good reason to believe that the telegraphic dispatch of January 12, 1885, the first dispatch sent by the plaintiff, and which read when delivered as from San Francisco, was erroneous; he had every reason to believe that the plaintiff was at Los Angeles and not at San Francisco.  The evidence of defendant shows that when Crossman expressed his doubts as to the plaintiff being in San Francisco, as the dispatch read, the telegraph company appreciating the importance of the message to the plaintiff and the necessity of the money going to the right place proposed to have the message repeated so as to be sure that the money should be sent right, which proposition was declined by Crossman.  It was eminently proper that the third special instruction asked by the defendant and refused by the court, embodying the proposition that if the jury found the facts to be as stated by the defendant as to the offer of the defendant to repeat the message

and the declension of the agent of the plaintiff to allow the same to be done, that the plaintiff could not recover damages in this action, she being estopped by the acts of her own agent, should have been given to the jury. The refusal of the court so to instruct the jury is assigned by the defendant as error. 4 Wait's Act. and Def., p. 718, sec. 2, and cases there cited.

3. The jury should have been instructed that if they found that R. A. Crossman had the opportunity of correcting the dispatch of the 12th of January, 1885, and had reason· to believe that it was incorrect, and failed when the opportunity was offered him of so doing, that his negligent acts estopped the plaintiff from recovering damages in this action. As to Law of Contributory Negligence. 4 Wait's Act. and Def., p. 718, sec. 2.

The verdict of the jury is excessive and wholly unsupported by the evidence, there being no evidence to support any such finding. Such verdict must have been intended to punish the defendant because it is a corporation. G. C. & S. F. R. R. Co. v. Greenlee, 62 Texas, 344; G. C. & S. F. R. R. Co. v. Wallen, 65 Texas, 568, 568; Thomas v. Chapman, 62 Texas, 193.

*Waul & Walker,* for appellee. —1. The court charged fully the true issue on the point, viz., whether Crossman did or did not inform defendant that Mrs. Simpson was at Los Angeles, and whether or not he directed the company to send the money to her at that place. Norvell v. Phillips, 46 Texas, 162; Cook v. Dennis, 61 Texas, 246; Altgelt v. Brister, 57 Texas, 432; H. & T. C. R. R. Co. v. Rider, 62 Texas, 267; Blanton v. Mays, 58 Texas, 422; Smith v. Redding 1 Posey's U. C., 360; T. & P. Ry. Co. v. Chapman, 57 Texas, 75; T. & P. Ry. Co. v. Wright, 62 Texas, 517; T. & P. Ry. Co. v. Murphy, 46 Texas, 356; Rosenthal v. Middlebrook, 63 Texas, 333; Albright v. Penn, 14 Texas, 290.

2. The correct rule of law respecting atmospheric influences is that to rebut proof of negligence the company would have to show affirmatively that the failure to transmit the order was from unforeseen causes which human agencies were powerless to overcome or control. Evidence to the effect that atmospheric disturbances may cause a mistake in a word is no excuse for failure to send a money transfer. W. U. Tel. Co. v. Bertram et al., 1 Con. Cas. Ct. App., sec. 1152; Leonard v. N. Y. Tel. Co., 41 N. Y., 544; see note to same case, 1 Am. Rep., 460.

3. No rule of law required Crossman to send or repeat dispatches before sending a money order. Whether or not he ordered the money sent to Los Angeles is the question. The court charged the correct rule of law applicable to the case. I. & G. N. R. R. v. Stewart, 57 Texas, 166.

ACKER, PRESIDING JUDGE.—Appellee's husband died in California, and

she sent a message by appellant from Los Angeles in that State, at 4 o'clock p. m. January 12, 1885, to her agent, R. A. Crossman, in Galveston, Texas, informing him of her husband's death—that she would leave there at 2 o'clock p. m. the next day, and requesting him to send to her two hundred dollars by telegraph immediately.

When this message was delivered to Crossman between midnight and daylight on the morning of the 13th of January it appeared to have been sent from San Francisco instead of Los Angeles. Crossman went to appellant's office in Galveston and was informed that the money could not be received by appellant before 9 o'clock a. m. At that hour Crossman and his clerk Bullock went to appellant's office, made the application for the transfer, and delivered the two hundred dollars, and paid four dollars and seventy cents tolls to appellant's agents.

The money was not received by appellee, and Crossman being informed by message from her that she had not received it remitted to her on the morning of January 14, through the Wells-Fargo Express Company, another two hundred dollars, which she received in time to leave Los Angeles with the body of her husband at 2 o'clock p. m. on that day.

This suit was brought on the 13th day of May, 1885, to recover of appellant damages for its failure to deliver the money as it had contracted to do. The petition alleged substantially that appellee being in great distress and need of money at Los Angeles, California, on the 13th of January, 1885, contracted through her agent at Galveston with appellant to transmit to her at Los Angeles two hundred dollars, paying appellant four dollars and seventy cents charges therefor; that appellant was informed and knew of her distress and immediate need of money, and contemplated the damages that would result to her from a breach of the contract; that appellant willfully and maliciously neglected to transmit to her the two hundred dollars, and converted the money to its own use; that pecuniary damage, mental distress, anguish, and mortification were the direct and natural results of the failure to transmit the money—setting out the facts and circumstances which resulted from the failure to transmit the money, and which produced the mental anguish, distress, and mortification; that the telegram sent by her to Crossman on January 12 requesting him to send the money was no part of her cause of action, and that no damages were claimed by reason of any mistake in that message, but alone for the failure to transmit and deliver the money to her as appellant had contracted to do. Appellee laid her damages at $1740.

Appellant answered by general demurrer, and special exceptions to so much of the petition as sought to recover damages for mental anguish. The answer also contained the following special defenses:

1. The stipulations in the printed contract under which appellee's first message was sent limited its liability for damages unless the message was repeated, and exempted it from liability for damages unless the claim

therefor was presented in writing within sixty days after the message was sent. It was averred that neither of these conditions had been complied with.

2. It was admitted that appellee's message requesting the money sent was sent by her from Los Angeles, but when it was delivered to appellee's agent in Galveston it appeared to have been sent from San Francisco instead of Los Angeles. It was averred that this change in the name of the place from which it was sent was caused by an accident to which the business of telegraphy is liable at all times without negligence upon its part, and which could have been guarded against by having the message repeated.

3. That when appellee's agent expressed to the agent of appellant his surprise that the message from appellee was headed San Francisco instead of Los Angeles, and declared his belief that she was at Los Angeles, appellant's agent then suggested and offered to have the message repeated, but appellee's agent declined to have it repeated and assumed all responsibility for any inaccuracy in the message, and made his written application to have the money transferred to San Francisco, which appellant did on that day. That the next day appellant discovered the mistake and immediately had the money transferred to Los Angeles. The answer admitted liability for $206.33, and averred that the amount had been tendered to appellee's agent, from whom it was received, on the 16th of January.

Appellant's special exception was overruled.

The trial was by jury, and resulted in verdict and judgment for appellee for one thousand dollars.

By the first assignment of error it is urged that the court erred in overruling the special exception.

We think it too well settled in this State to justify elaborate discussion here, that mental anguish may constitute an element of actual damage for which compensation may be recovered upon breach of a contract where such anguish is the direct and natural result of such breach. The liability rests upon the principle that the mental distress was caused by the breach of the contract and was contemplated as a part of the consequences of such breach at the time the contract was entered into.

To authorize a recovery of damages for mental distress resulting from the non-performance of a contract for the payment of money it must be alleged and proved that the party contracting to make the payment was informed at the time of making the contract of the peculiar condition and circumstances of the party for whose benefit the contract was made which render the prompt performance of more than ordinary importance, that the party contracting to make the payment may anticipate the more serious consequences of the breach.

Appellee alleged that appellant was fully informed of her unfortunate

surroundings and urgent need of money at the time the contract was made, and specifically set forth the circumstances brought about by appellant's failure to perform the contract, which circumstances it was alleged produced the mental anguish, distress, and mortification.

We think the court did not err in overruling the special exception. Stuart v. Tel. Co., 66 Texas, 581, 586.

Under numerous assignments of error it is contended that appellee's cause of action arose on the mistake in transmitting her message of January 12th, which, when delivered to Crossman at Galveston, gave San Francisco as the name of the place from which it was sent, and that by the terms of the contract under which it was sent appellee could not recover unless she had the message repeated and presented in writing her claim for damages within sixty days. Several special instructions upon appellant's theory were requested and refused, and the court charged the jury that the suit was not brought to recover damages by reason of the error in that telegram, but to recover damages for the alleged failure of appellant to send the money to Los Angeles, and that the stipulations in that telegram had no application to the suit.

Appellee expressly disclaimed any right of action upon the error in the name of the place from which her telegram of January 12th was sent, and based her action and right of recovery solely upon the contract to transmit the money and its breach.

We think the court did not err in refusing to give the special instructions requested, nor in giving the charge complained of. The contract to send the message from appellee at Los Angeles to her agent at Galveston and the contract to send the money to appellee were separate and distinct undertakings, and that appellant so regarded them at the times they were respectively entered into is clear from the testimony of Chesley and Shultz, its agents at Galveston.

If this was an action brought to recover damages for appellant's negligence in erroneously giving the name of the place from which the message was sent, we think it may well be doubted whether the stipulation requiring messages to be repeated would apply. When a telegraph company receives a message to be transmitted calling for an important reply the company knows that the reply would be unavailing unless the party who is to make it is informed of the place to which it should be sent. It is believed that the name of the place from which the message is sent is not a part of the message; it is a fact peculiarly within the knowledge and keeping of the company, to be communicated to the party to whom the message is sent. The agent or operator at the receiving office must necessarily make known the place from which the message was sent in transmitting it. It is believed to be his duty to write upon the paper containing the message the name of the place from which it is sent. Scott & Jar. Law of Tel., sec. 381.

Appellant requested a charge to the effect that Crossman having good reason to believe that appellee was at Los Angeles and not at San Francisco, as indicated by the message received from her, his negligence in failing to have the message repeated estops appellee from claiming damages in this suit.  The special charge was refused and this is assigned as error.

By the pleadings of appellee and the charge given by the court the first message from appellee to Crossman was eliminated from the case and in so charging we have decided there was no error.

The court charged the jury to the effect that if Crossman directed the money to be sent to San Francisco appellee could only recover the two hundred dollars with interest from the date of its delivery to appellant; but that if Crossman directed the money to be sent to Los Angeles and appellant negligently failed to send it to appellee at that place, and was apprised of the importance to her of receiving the money and the probable consequences to her of the failure to deliver it, appellee would be entitled to recover.  This charge made the right of appellee to recover depend solely upon the question of fact whether Crossman directed the money sent to one place or the other, without regard to the inducements or influences that may have controlled Crossman in giving such direction.  We think this charge was certainly as favorable to appellant as the facts adduced upon the trial would justify.

Appellant's agents at Galveston testified that Crossman expressed his doubts as to appellee being at San Francisco at the time he applied to have the money transmitted, and said he believed she was at Los Angeles, and that they offered to repeat the message but he declined to have it done.  On the same day and about the same time that the money was deposited with appellant, Crossman sent through the hands of these same agents a message to appellee at Los Angeles informing her that he had sent the money, and she testified that she received his message the day it was sent.

Crossman testified that he told appellant's agents at the time he applied for the transfer of the money that appellee was not at San Francisco but at Los Angeles, and that if the money was sent to San Francisco he did not think she would get it; that the agents replied that they never made mistakes like that; that they knew their own business; that if the money went at all it should go to San Francisco, and insisted that he should so make the application.

Bullock, Crossman's clerk, who was with him and wrote the application for the transfer of the money, testified that he showed Mr. Shultz, who was in charge of the office, the telegram from appellee headed San Francisco and asked to see the original telegram.  Shultz told him they did not keep a copy.  Crossman said it was impossible for appellee to be in San Francisco and that he was satisfied she was in Los Angeles; that

appellant's agent replied that the telegram was correct, that they made no mistakes; that it was under the orders of appellant's agents that he wrote the application for transfer to San Francisco instead of Los Angeles; that it was not so written with Crossman's sanction, as he said he was satisfied she was at Los Angeles; that he suggested to Crossman that perhaps the money had to go first to San Francisco and then be transferred to Los Angeles, and the application was made as directed by appellant's agents. These agents testified that they did not require Crossman to make the application for transfer to San Francisco, that they gave no directions as to the place the money should be transferred to.

Crossman and Bullock testified that appellant's agents did not propose to have the message repeated. It is evident from the fact that Crossman sent his message to Los Angeles informing appellee that he had sent the money that he was morally certain that she was there and not at San Francisco. Some influence must have operated upon him to induce him to consent to have the application made for transfer of the money to San Francisco instead of Los Angeles, if it was in fact so made. If the application was written for transfer to San Francisco by direction of appellant's agents when Crossman insisted that appellee was at Los Angeles and that the money should be sent there, and the jury had so believed from the evidence, then we think appellant would have been liable, notwithstanding the application was in fact made for transfer of the money to San Francisco.

When appellant was informed by Crossman's conversation and acts that he believed appellee was at Los Angeles, notwithstanding the telegram from her when delivered to him appeared to have been sent from San Francisco, and appellant under these circumstances took no steps to inform itself further, we think it assumed the risk of the consequence resulting to appellee by the negligence of its agents in changing the name of the place from which the message was sent if that change influenced its agents at Galveston to insist that the application should be made for the money to be transferred to San Francisco instead of Los Angeles.

The issue as to what constituted the contract under which appellant received the money is not made. No assignment of error is presented bringing the question to our attention so that it can be passed upon here. There was no objection to the parol testimony introduced tending to show that the contract made was for transfer of the money to Los Angeles, notwithstanding the written application may in fact have been originally made for transfer of the money to San Francisco.

The original application for the transfer of the money was used in evidence, and the name "San Francisco" was erased by a pen mark drawn across it, and the name "Los Angeles" written in its stead.

Chesley, appellant's manager at Galveston at the time the application was made, testified by deposition that the application was made to trans-

fer the money to Los Angeles, and wrote a letter to appellee proposing to return the money that had been deposited with appellant to be transferred to her at Los Angeles. This witness gave it as his opinion that the name of the place was changed from San Francisco to Los Angeles at St. Louis.

From the testimony of Crossman and Bullock it is evident that they desired the money sent to Los Angeles, although they may in fact have written San Francisco on the application. We think the jury might have found from the evidence that the application was in fact made for transfer of the money to Los Angeles instead of San Francisco, notwithstanding the writing may have named San Francisco.

It is also contended that the verdict is excessive, but we can not say that it is. The law furnishes no rule for estimating damages for mental anguish; this is left to the discretion of the jury, and that discretion will not be controlled or the verdict vacated, unless it appears from the amount for which the verdict is returned, together with other matters disclosed by the record, that the jury may have acted from prejudice or other improper influence rather than an honest desire to award adequate compensation for the injury.

Appellant was informed by the message which it received from appellee at Los Angeles and delivered to Crossman at Galveston, as well as from information given to it by Crossman at the time the contract was made, that appellee was in a distant State with the dead body of her husband, awaiting the receipt of the money to return to her home at Galveston. It was informed that she expected to leave Los Angeles at 2 o'clock p. m. on the day the money was placed in its hands, and it must be presumed that the contract was entered into with reference to and in contemplation of the consequences that would result to appellee by its breach.

That appellant might have delivered the money to appellee at Los Angeles on the day that it was received in time for her to leave at 2 o'clock p. m. on that day is demonstrated by the fact that the express company transferred the money over appellant's wires on the 14th of January in time for her to receive it and leave Los Angeles at 2 o'clock p. m. on that day.

We find no error in the record requiring reversal, and are of opinion that the judgment of the court below should be affirmed.

*Affirmed.*

Adopted March 26, 1889.