# THE CHICAGO, BURLINGTON AND QUINCY R. R. Co.

## *v.*

## ALBERT GRIFFIN.

1. RAILROAD—*duty of conductor to give passenger a check upon taking up ticket.* In an action by a passenger against a railroad company to recover damages for being ejected from the cars, where the plaintiff insisted that he had purchased a ticket to a certain station, which the conductor took up before reaching the same, while the conductor contended that the ticket called for passage only to the station where the plaintiff was put off, the court instructed the jury, as a matter of law, that it was the duty of the conductor, in taking up the ticket, to give back a check, or punch the ticket and allow the plaintiff to hold it until all intermediate stations were passed: *Held*, that the law imposes no such duty, and if it did, the neglect to do so could work no injury, as the plaintiff was entitled, notwithstanding, to be carried to the station to which he paid his fare, and that by not demanding a check on surrendering the ticket the point could not arise.

2. SAME—*contract to carry—mistake in ticket.* If a passenger pays his fare to a certain station, and the ticket agent inadvertently gives him a ticket to an intermediate station, the demand of fare a second time by the conductor will be a breach of the implied contract on the part of the company to carry him to the proper station. By paying on such demand his action will be as complete as if he resists the demand, and suffers himself to be ejected, and his ejection in such a case will add nothing to his cause of action. It is his duty to pay the fare demanded, and if the company fails to make suitable reparation for the indignity, he can maintain his appropriate action.

3. SAME—*right to eject passenger for misconduct.* A passenger must observe proper decorum, and observe all reasonable rules adopted by the company. He is not authorized to interpose resistance to every trivial imposition to which he may feel himself exposed that must be overcome by counterforce in order to preserve subordination. As, when the passenger's ticket, by mistake, did not take him to the proper station, and 20 cents fare was demanded of him, which he refused to pay, and he suffered himself to be forcibly ejected, and afterwards entered another car, and while the conductor was making change for him used profane and obscene language, in the presence and hearing of gentlemen and ladies, for which he was again expelled, with no more force than was required by his resistance: *Held*, that whatever personal injury he received in consequence of his resistance and violence, should be attributed to his own want of subordination, for which the law gives him no redress.

4. The use of grossly profane and obscene language by a passenger in a railway coach, where there are ladies, is such a breach of decorum, no matter if provoked to it, as will work a forfeiture of his right to be carried as a passenger, and the conductor has the right to cause him to be expelled from the cars, using no more force than is necessary for the purpose.

5. The exaction of a trifling sum as fare, which had already been paid, can not justify the use of grossly profane and obscene language by a passenger in the presence of ladies, so that the company may not expel him from the cars. He must observe order, and seek his remedy for the illegal exaction by the law.

6. INSTRUCTIONS—*argumentative.* An instruction is faulty which is argumentative. It is not proper to inject an argument into an instruction.

7. SAME—*assuming facts.* An instruction is fatally defective which assumes the existence of facts which are controverted by the evidence.

8. SAME—*giving a partial view of facts.* An instruction which purports to give a summary of all the principal facts proven, and yet leaves out all that extenuate the conduct of the other party, when such may have an important bearing upon the question of damages, is highly objectionable and calculated to mislead.

9. EXCESSIVE DAMAGES—*expelling railroad passenger.* Where a passenger paid for a railroad ticket to a certain station, but through inadvertence received a ticket to an intermediate point, and refused to pay fare from the station named in his ticket, which was only 20 cents, and refused to get off, so that he had to be put off by force, and immediately got aboard another coach, agreeing to pay, but while making change made use of grossly profane and obscene language in the presence of ladies, for which he was again forcibly expelled, no more force being used either time than was necessary to overcome his resistance, it was *held,* that a verdict in a suit by him against the company, giving him $1500, was grossly excessive and out of all proportion to the injury inflicted upon the plaintiff, other than what was attributable to his own misconduct.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDWIN S. LELAND, Judge, presiding.

This was an action of trespass, by Albert Griffin against the Chicago, Burlington and Quincy Railroad Company, to recover damages sustained in being expelled from the defendant's cars. The material facts are stated in the opinion. A trial was had, resulting in a verdict and judgment of $1500, in favor of the plaintiff, from which the defendant appealed.

Mr. B. C. COOK, for the appellant.

Messrs. EUSTACE, BARGE & DIXON, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Appellee was ejected from the cars on appellant's road by its employees, and this action is to recover damages for the indignity and injuries suffered. It is insisted he had a ticket from Mendota to Earl, but the conductor claims the ticket was for an intermediate station, called Meriden. There is a direct conflict in the evidence on this, the most vital point in the case. The ticket was purchased at Mendota. No doubt appellee intended to call for one to Earl, and it seems most probable he did.

We are inclined to think appellee really paid for a ticket to Earl; if so, the agent must have inadvertently given him one for Meriden. The proof is, he gave the ticket agent a one dollar bill, and received a ticket and sixty-five cents in change. The fare to Earl station was thirty-five cents. The evidence as to the amount paid is quite conclusive; but the proof is equally conclusive the ticket appellee really had was for Meriden. Such a mistake might occur, and no one seriously to blame. It was a trifling matter at most, and no serious consequences ought to have resulted from it.

Before reaching Meriden station, the conductor took up appellee's ticket, for the reason, as he says, it was for that station. The conductor counted his tickets, and remembered he had four passengers for that station. When the train stopped, he noticed only three got off. As the train was about to leave the station, the conductor approached appellee and demanded his ticket. He insisted the ticket which he had surrendered was for Earl. This the conductor endeavored to explain to him was a mistake, and demanded the usual fare: twenty cents. On the refusal of appellee to pay fare, the conductor, with his assistants, put him off the train. He regained the cars a second time, and took a seat in a coach

occupied by ladies and gentlemen. The conductor was still willing he should ride upon the payment of fare. While in the act of making the change, appellee addressed him in obscene and abusive language, loud enough to be heard by the ladies and others occupying that coach. His money was instantly returned to him, and the conductor and his assistants again ejected him from the train. The force used was not more than was necessary to overcome the resistance. There was considerable violence on the part of both parties. When divested of all unnecessary details, these are the principal facts in the case, and might have been briefly presented on the trial in the court below, instead of amplifying them so as to constitute no inconsiderable volume, as the record does when printed.

Exceptions to the admission of testimony were taken at the trial, but they are not of sufficient materiality to affect the merits of the case. Some errors in that respect intervened, but they are trivial in their character, may be readily detected, and no doubt will be avoided on another trial, if one shall be had.

But the principal errors assigned are upon the rulings of the court, in giving and refusing instructions. The points made are, by far, too numerous to be the subject of discussion, without extending this opinion to an unreasonable length, not demanded by the importance of the case. All that is material to the decision may be presented on a consideration of a few of the most faulty instructions.

In the third instruction it is declared, as a matter of law, it was the duty of the conductor, on taking up appellee's ticket, to give him back a check, or to punch the ticket and allow him to retain it until all intermediate stations had been passed. We are not aware the law has imposed this obligation upon a conductor of a passenger train. It would, perhaps, be a reasonable rule for the company to adopt, but it is one they may adopt or omit, as they may deem most expedient. There is great force in the reasoning of some of the

cases that hold a passenger would not be bound to surrender his ticket before passing all intermediate stations, without receiving a check in return. But there was no demand in this case for a check when the ticket was surrendered, and the point does not arise.

The instruction, however, is liable to a further objection. It may have induced the belief the company was liable if the conductor omitted to give appellee a check on taking up his ticket, if it be conceded it was a reasonable rule. Such is not the law. The omission to perform that duty, if the law made it obligatory upon him to do it, could, of itself, work no injury to appellee. If he had paid his fare to Earl, he was entitled to be carried to that station, notwithstanding the conductor had omitted to give him a check when he surrendered his ticket.

The fourth charge is still more objectionable. It is as follows:

"Although the jury may believe, from the evidence in the case, that plaintiff used profane and obscene language while on defendant's passenger cars, yet, if the jury further believe, from the evidence in this case, that the conductor of said cars, or other employees of said defendant, wrongfully provoked or excited plaintiff to use such language, and that such provocation or excitement of plaintiff was made by defendant's said servants before plaintiff used such language, then the jury are instructed that the use of such language by plaintiff, under such circumstances, gave defendant no right to expel or eject the plaintiff from the cars."

The doctrine of this instruction can not be maintained on any principle with which we are familiar.

The controversy between the parties had its origin in an honest mistake. There was no purpose on the part of the officers of the road to inflict any indignity on appellee. He understood he had paid his fare to Earl, and had surrendered his ticket for that station. No amount of proof or reasoning could unsettle his convictions as to those facts. The conductor

was equally honest in the belief the ticket was for Meriden. The fare demanded was only twenty cents.

On the hypothesis appellee had paid his fare, he was entitled to be carried to Earl station, and the demand of fare a second time was a breach of the implied contract on the part of the company to carry him to that station. Had he paid the sum demanded, his right to an action would have been as complete as it was by resisting the demand made upon him by the conductor. The fact that he caused himself to be forcibly ejected from the cars, can add nothing to his cause of action.

The evidence tends to prove the mistake occurred at Mendota, through the inadvertence of the ticket agent in giving out the wrong ticket. If so, the conductor was right in demanding fare a second time. He was not bound to rely upon the statements of appellee that he had paid his fare to the station to which he desired to be carried. It was the duty of appellee to pay the fare demanded, and if the company refused to make suitable reparation for the indignity to which he had been exposed in being compelled to re-pay his fare, he could maintain an appropriate action.

The conductor must necessarily have the supervision and control of the train, otherwise there would be no protection to the lives or comfort of the public travel. If he abuses his trust, or for any gross misconduct on the part of himself or other employee towards passengers, the company will be responsible. The law requires the highest degree of care on the part of all railroad employees on passenger trains, for the comfort and safety of the passengers. It is incumbent on them to be civil and decorous in their conduct towards them.

But like responsibilities rest upon passengers. They must observe proper decorum, and be submissive to all reasonable rules established by the company. The law will not permit a passenger to interpose resistance to every trivial imposition to which he may really feel or imagine himself exposed by the employees, that must be overcome by counterforce in order to preserve subordination. It is due to good order and

the comfort of the other passengers, that he should submit for the time being, and redress his grievances, whatever they may be, by a civil action.  A party will be entitled to quite as much damage for any wrong or injury quietly endured as if violently resisted; indeed, the policy of the law ought to be to award him a higher measure of damages.  Whatever personal injuries may result from his violence, should be attributed to his own want of subordination, for which the law will afford him no redress.  He has no more lawful right to redress by his own strong arm what he may deem an annoyance committed by a railroad employee, than he has to resist in like manner any other supposed invasion of his convenience or rights.  The courts afford opportunity to redress every civil injury, no matter what its character, and the party must pursue the remedy given by law.

The act of the company's employees in putting appellee off the train the first time, put an end to the alleged contract to carry him to Earl station.  If wrongfully, the company was responsible.  When he re-entered the cars, it was upon the implied condition that he would pay the usual fare.  It was due to the comfort and peace of the other passengers he should do this in a quiet and orderly manner.  This he did not do.  The language, as stated by himself, addressed to the conductor while he was in the act of making change, was insulting in the highest degree, and must have been very offensive to the other passengers.  If the version given by appellant's witnesses can be credited, it was grossly profane and obscene.  The language used is of such a character that we can not, with propriety, re-produce it in this opinion.

The instruction tells the jury if the employees of the company provoked or excited him to use the objectionable language, it gave them no right to expel him from the cars. This is not the law, and under the circumstances of this case it was highly calculated to mislead the jury.

The use of the objectionable language can not be justified upon any occasion nor for any cause.  If appellee had to

re-pay his fare, he had the clear right to make his protest, but it could be done just as forcibly by the use of chaste words. The profanity and obscenity of which he was guilty, according to his own testimony, added nothing to the strength of his protest. If he was guilty of using the language attributed to him by the witnesses in a coach where there were ladies, it was a breach of decorum so gross as would work a forfeiture of his right to be carried as a passenger, and the conductor could rightfully cause him to be expelled from the cars, using no more force than was necessary for that purpose.

We had occasion, in deciding the case of *The Chicago and Northwestern Railroad* v. *Williams,* 56 Ill. 185, to remark upon the relative rights and respective duties of passengers and employees having charge of the train. It was there said: "If a person on a train becomes disorderly, profane or dangerous and offensive in his conduct, it is the duty of the conductor to expel such guilty party, or at least assign him to a car where he will not endanger or annoy other passengers. Whatever rules tend to the comfort, order or safety of the passengers the company is fully authorized to make, and amply empowered to force compliance therewith."

The language used by appellee was of the most offensive character, which no conductor ought to allow in a coach occupied by ladies, and is not and can not be justified by the fact the conductor may have exacted fare of him in a trifling sum, when it had been previously paid. It is indispensable that good order should be preserved in all railroad carriages, and the company that neglects to do it fails in its duty to the public. It can only be done by requiring all persons to submit to all reasonable rules established for that purpose; and for any personal injuries or gross misconduct on the part of the employees of the company, redress must be sought in the courts rather than by the strong arm of him who may deem himself insulted or injured.

The tenth instruction is also erroneous. In the first place it is argumentative, and is objectionable for that reason. In

*Chapman* v. *Cawrey*, 50 Ill. 512, this court said it was not proper to inject an argument into an instruction, as seems to have been done in this one. Secondly, it assumes the existence of facts which are controverted by the evidence, and is fatally defective in that regard. *Durham* v. *Goodwin*, 54 Ill. 469. Thirdly, it purports to give an epitome of all the principal facts proven, and yet leaves out all that extenuate the conduct of the employees of the company. The very fact the court had given what assumes to be a summary of the facts in the case, may have induced the belief in the minds of the jury they were all the facts necessary to be considered in arriving at a conclusion. Such an instruction was highly objectionable, and must have misled the jury to the prejudice of appellant.

The damages awarded are out of all proportion to any injury inflicted upon appellee by the employees of the company, other than what must be attributed to his own misconduct in opposing with force the demands made upon him by the conductor, which he must have known, if they were wrong, they arose out of an honest mistake, either on his part or that of the ticket agent at Mendota.

This is not like the case of *The Chicago and Alton Railroad Company* v. *Flagg*, 43 Ill. 364, where there was no dispute as to the tender of fare, which was refused on the ground the passenger ought to have procured a ticket, as the rules of the company require, before seeking passage on a freight train. Plaintiff, in that case, was prevented, by the fault of the company's own agent, from procuring a ticket at the office, and, having tendered the usual fare, he was lawfully entitled to be carried as a passenger. Nor like the case of *The Illinois Central Railroad* v. *Johnson*, 67 Ill. 312, where plaintiff was ejected from a freight car for a like reason. In both those cases the passengers, with much more propriety, could have opposed with force the attempt of the conductor to put them off the cars, yet it could not be justified in those cases.

In the case of *The Illinois Central Railroad Co.* v. *Cunningham,* 67 Ill. 316, plaintiff was put off a freight train because he had not obtained a ticket before entering the caboose car. He was prevented from obtaining a ticket by the fault of the company's own agent, and was himself guilty of no omission of duty. Notwithstanding it was his clear right to be received and carried as a passenger, under the previous decisions of this court, a verdict for $500 was regarded as excessive, and the judgment for that reason alone was reversed.

Justice requires this cause should be submitted to another jury, with instructions in accordance with the views expressed in this opinion, and such other instructions as the court may deem proper, upon hearing the evidence again.

The judgment is reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE CRAIG : I concur with the majority of the court in reversing the judgment, but do not think the court erred in giving plaintiff's fourth instruction.