## PAINE v. THE C., R. I. &. P. R. Co.

1. **Railroads:** THREAT TO EJECT PASSENGER: PUNITIVE DAMAGES. A mere threat by a conductor to eject a passenger from a train unless the passenger shall pay a small amount in addition to the regular fare because unprovided with a ticket, even though he had tried to procure the ticket and found the ticket office closed, does not entitle him to punitive damages.

2. ———: ———: MEASURE OF DAMAGES. In such a case, where no malice or wantonness appeared on the part of the conductor, the passenger would be entitled to recover the amount paid in excess of the regular fare, with interest.

*Appeal from Jefferson Circuit Court.*

TUESDAY, APRIL 17.

THE plaintiff, wishing to take passage on defendant's cars from Eldon to Fairfield, Iowa, applied for a ticket at the ticket-office at Eldon, but was unable to obtain one, the ticket agent being absent. He then took a seat in defendant's cars, and tendered to the conductor as fare the price usually charged for a ticket. The conductor refused to accept the same and demanded ten cents more, being the excess usually charged to passengers who neglected to procure tickets and

paid on the cars. The plaintiff objected to paying it, but finally did pay it, being induced to do so by a threat of the conductor to stop the cars and put him off. This action is brought to recover for the ten cents, and also for damages alleged to have been sustained by reason of the discomfort and insult. Other facts are stated in the opinion. Verdict for plaintiff for $250. Defendant appeals.

· *Thomas F. Withrow*, for appellant.

*McCoid & Heron*, for appellee.

ADAMS, J.—I. At the time the plaintiff applied at the ticket office for a ticket two other persons, one Boerstler and one Russell, applied also for tickets. The three took seats in the cars together. The conductor first came to Boerstler and asked him for his fare and Boerstler tendered the price of a ticket which the conductor refused to accept unless he should pay ten cents more. Thereupon Boerstler explained to the conductor the reason why he had no ticket, and the conductor insisted, notwithstanding the reasons given, upon his paying the extra ten cents, and informed him if it was not paid he should stop the cars and put him off the train. Boerstler then paid the full amount demanded. The conversation between the conductor and Boerstler was heard by the plaintiff. When the conductor asked him for fare he re-stated what Boerstler said. What occurred between the plaintiff and the conductor may be given in plaintiff's own language. He said: "I objected to paying it, and told him we tried to get tickets and the office was closed and it was impossible to get one; he was very firm and positive, and I thought he was a little excited; I told him that was not business to have a ticket office closed and then ask for more; then he said he did not want to hear any more rigmarole; he said I would have to pay or get off the train; he said he guessed they knew their business; he said I should pay it or he would stop the train and put me off; he said he did not want to go over that rigmarole again, that I had heard what he said to Mr. Boerstler; I wont say positive but I think he was a little excited; he didn't use any

violence; I felt humiliated that the man had power over me; I should judge there were some fifteen or twenty in the car; I listened to hear all I could of the conversation between the conductor and Boerstler; when he came to me I offered him seventy cents, and he said he would have to have ten cents. more; I am sure the conductor was a little excited, and not only so, but he was a little insulting; then I undertook to reason with him and he said he did not want any more rigmarole out of me, because, he said, I heard his conversation with Boerstler; his insolence was in saying that he guessed they knew their business; I might have been a little excited; I did not insult him; I think he was a little insulting; he didn't offer me any violence, not physical; he said he did not want to hear anything more from me, but the dime he was going to have; I don't think he used profane language; he didn't touch me; I got home safely on that train, and didn't meet any accident; I did suffer some in mind; you can judge how a man would suffer; I should say there were fifteen or twenty on the train."

Upon the facts as above detailed the court gave the jury an instruction which is in the following words:

"7. If you find for the plaintiff under the foregoing instructions, you will allow him such damages as will sufficiently compensate him for the injury he sustained, and if you find from the testimony that the wrongful act was done in a spirit of oppression, malice or wantonness, you may add to such compensatory damages such exemplary damages as, from all the circumstances, you may deem just." To the giving of this instruction the defendant excepted.

1. RAILROADS: threat to eject passenger: punitive damages.

Whether, in case the wrongful act of the conductor had been malicious or wanton, the plaintiff would be entitled to exemplary damages as against the company, there being no evidence that the company was guilty of malice or wantonness, or was in fault in employing such a person as conductor, we need not determine. The defendant objects to the instruction upon the ground only that the evidence does not show malice or wantonness, and we think that the objection is well taken.

While the defendant could not, under the circumstances, properly demand more than the ticket rate (see *Jeffersonville R. R. Co. v. Rogers*, 38 Ind., 116), we are unable to discover in what the conductor said or did anything more than an intention to discharge his duty to his employer. The firmness which he exhibited was only such as probably seemed to him necessary in the discharge of such duty. It was held in *State v. Chovin*, 7 Iowa, 204, that the rule of railroad companies requiring passengers who do not procure tickets to pay a small extra amount, is reasonable and proper. The rule can be enforced, so far as we can see, only through the conductors. And we do not see how they could properly be vested with a discretion to waive it upon the mere statement of passengers that they had been unable to procure tickets. Such a discretion would render the rule, we think, substantially nugatory. At all events there is no evidence that the conductor in this case had been vested with such discretion. If not, there is no evidence of malice or wantonness on his part. He had no means of enforcing the rule, except to stop the train and put the plaintiff off. This, it seems, he threatened to do, and repeated the threat, and used some other language about it. But this, to our mind, shows a desire on the part of the conductor to avoid being subjected to the necessity of putting the plaintiff off if he could discharge his duty without it. Had he stopped the train and put the plaintiff off immediately upon his refusal to pay, his conduct would have been less justifiable. Yet, even then the company would not necessarily have become liable for exemplary damages. In *P., Ft. W. & C. R. R. Co. v. Slusser*, 19 Ohio St., 157, the defendant in error was wrongfully ejected from one of the plaintiff's cars, but no more force was used than necessary, and the defendant received no material bodily injury, nor was he in any respect insulted otherwise than by the act done. The court instructed the jury that "if they found the conductor acted maliciously in ejecting the plaintiff (defendant in error) from the car, they were at liberty to award punitive damages for the sake of the example." It was held that, however correct the instruction

might have been as an abstract proposition, it was uncalled for and tended to mislead the jury.

In *Hamilton v. Third Avenue R. R. Co.*, 53 N. Y., 25, the plaintiff was wrongfully ejected from the defendant's car. It was held that punitive damages were not allowable, there being no evidence that the conductor acted otherwise than honestly. If, therefore, the actual expulsion of a passenger from a railway car, although wrongful, is not such evidence of malice or wantonness as will entitle the passenger to exemplary damages, the mere threat to do it cannot, for a still stronger reason, be so considered.

II. It is objected by the appellant that the verdict is excessive. We are of the opinion that this objection is also well taken. We have no doubt that in a proper case damages may be recovered as compensatory for injury to the feelings. We so held in *McKinley v. Chicago & N. W. R. Co.*, 44 Iowa, 314; but in the present case we do not think that damages for injured feelings are recoverable. If the conductor was not guilty of malice or wantonness, but was conscientiously endeavoring to carry out a wholesome rule of the company, as we must assume in the absence of all evidence to the contrary, the plaintiff had no occasion to be injured in his feelings. He should have appreciated that so far as the conductor was concerned the difficulty arose from one of those complications in his business for which he was not responsible.

So far as the company was concerned, it is enough to say that no insult was intended to the plaintiff by them. This the plaintiff well knew. It is possible that a better rule might have been devised, or some means adopted to guard against the occurrence of such a difficulty as has arisen in this case, but, even if this were so, we should regard the occurrence as the result of mere oversight. It would involve nothing of personal affront, and we cannot regard the plaintiff's injury as extending beyond the loss of money wrongfully exacted. This, doubtless, he is entitled to recover with interest. If it be said that such a remedy is equivalent to no remedy, it may be replied that it is not the fault of the law, but of the case. We

cannot allow more than compensation because mere compensation, when obtained, would prove to be less than the cost of obtaining it. As we discover nothing in the circumstances of this case by which the plaintiff as a reasonable man should have been injured in his feelings, we think his recovery must be limited to his pecuniary loss. It follows that the verdict was excessive and the judgment must be

REVERSED.

DAY, CH. J.—I concur in the foregoing opinion, but not in the statement that compensatory damages may be awarded for mere injury to feelings.