## A. L. HOFFMAN *vs.* NORTHERN PACIFIC RAILROAD COMPANY.

### December 15, 1890.

**Railway—Round-Trip Ticket—Transferability.**—After a "round-trip" or "excursion" railroad ticket has been used by the holder in going one way over the route, it is good, in the hands of a purchaser from the original holder, for the return trip, there being no condition in the contract to the contrary.

**Same—Expulsion of Holder—Evidence.**—In an action for a threatened expulsion of a passenger from a railway train by the conductor, for the alleged invalidity of his ticket, evidence considered as not justifying the conclusion that the conductor acted malevolently.

**Same—Exemplary Damages, when Allowed.**—The mere fact that an act may have been wrongful and injurious does not justify exemplary damages, in the absence of actual malice or wanton indifference as to the rights invaded.

**Same—Damages—Matters too Remote.**—The fact that the passenger was compelled to *borrow* money to pay fare illegally exacted is too remote to afford a basis for the assessment of damages. The same is true as to the remarks or comments of other passengers subsequent to the transaction complained of.

Appeal by defendant from an order of the district court for Crow Wing county, *Searle,* J., presiding, (acting for the judge of the 15th district,) refusing a new trial after a trial before *Holland,* J., and verdict of $300 for plaintiff.

*Tilden R. Selmes,* for appellant.

*J. B. Douglas* and *Wetherby, True & Warner,* for respondent.

DICKINSON, J.  This action is for the recovery of damages for an alleged assault and threatened expulsion of the plaintiff from a passenger train of the defendant.  The facts are so nearly like those in Carsten against this same defendant, 44 Minn. 454, (47 N. W. Rep. 49,) our decision in which has been recently filed, that we refer to the report of that case both as stating substantially the facts of this case, except as herein otherwise stated, and as deciding some of the legal questions identical in both, and which will therefore not be particularly

noticed here. This plaintiff got on the train at Minneapolis to go to Brainerd, having a ticket which had been issued by defendant for passage from Wadena to Minneapolis and return, and which, having been used for passage to Minneapolis, entitled the holder to the return passage. The plaintiff had purchased it of a ticket broker, but, as was held in the *Carsten Case,* the use of the ticket was not restricted to the original holder, and the plaintiff, owning the ticket, had the right to be carried from Minneapolis to Wadena. Brainerd was an intermediate station. When the ticket exchanger came through the cars, taking up tickets, and giving out checks in their place, to be taken up by the conductor, he refused to accept the plaintiff's ticket, for the reason that it had been purchased from a ticket broker,—a "scalper,"—and he stated that the plaintiff would have to pay his fare or get off the train. When the conductor came to the plaintiff, he refused to receive the ticket for fare, because, as he testified, and as his language at the time indicated, the ticket exchanger had refused to take it. Several times the conductor talked with the plaintiff, telling him that he could not take the ticket, and that the plaintiff must pay his fare or get off the train. The plaintiff said that he could do neither; that he had no money, and must get home. No intemperate language was used until after several interviews of a like import, when, according to the plaintiff's testimony, some two hours after starting, the train being at a station, the conductor said to the plaintiff, with an oath, "Stop this monkey work. Get off here, or else pay your fare." The plaintiff not moving, the conductor then seized him by the shoulder and arm, and was moving him towards the door to put him off, the plaintiff offering no resistance, when another passenger, who had promised the plaintiff to pay his fare if necessary, did pay it. The plaintiff evidently did not intend to pay the fare demanded, nor to leave the train, until actually compelled to do so; and no more violence was used than was necessary to enforce the demand that the plaintiff pay the fare or leave the train.

In compliance with the sixth request of the plaintiff, the court instructed the jury, in substance, that, if they believed that the conductor refused to permit the plaintiff to ride on this ticket, the conductor giving no excuse therefor to the plaintiff, except that the ticket

was "scalped," (bought from a ticket broker,) "and that no excuse therefor existed," they would "have a right to presume· that the conductor acted malevolently, and with a tyrannical or oppressive motive; and, if you so believe from all the evidence in the case, you have a right to award the plaintiff any amount as damages that is proper,. not exceeding the sum of $1,500." We understand the words, "and that no excuse therefor existed," to mean that there was no legal excuse for the conductor refusing to accept the ticket, and we hold that there was no such excuse. As applied to the facts of this case, the instruction embraced, in effect, the proposition that if the conductor gave no other excuse for his refusing the ticket than that it had been "scalped," and if his refusal was not legally justifiable, the jury might presume that he acted from motives of malice, and hence that punitory damages might be awarded. We deem this instruction to have been erroneous, under the circumstances of this case. It seems to us entirely apparent from the conduct of the conductor, and from the whole case, that, while he was not legally justified in refusing to allow the plaintiff to ride on this ticket, he was not actuated by malice, however mistaken he may have been as to the legal rights of the plaintiff, and as to his own duty in the premises. The malice which will justify the awarding of exemplary damages— damages in excess of what may sufficiently compensate for the injury done, and which are awarded for the purposes of punishment and example—is not the mere doing of an unlawful and injurious act. The wrong must be malevolently done, or in wanton indifference to the rights invaded. *Seeman* v. *Feeney,* 19 Minn. 54, (79;) and see *Du Laurans* v. *First Div., etc., R. Co.,* 15 Minn. 29, (49;) *Carli* v. *Union Depot, etc., Co.,* 32 Minn. 101, (20 N. W. Rep. 89;) 5 Am. & Eng. Enc. Law, p. 21, notes. Of course, such malice may often be inferred from the nature of the wrong, but we think that such an inference as to the conductor in this case is rebutted by his course of conduct, and by the circumstances to which we have only briefly referred. The defendant is entitled to a new trial, by reason of the error involved in the above instruction.

We think, too, that the seventh request of the defendant should have been given. This was to the effect that the necessity for the

defendant to borrow the money of a fellow-passenger to meet the demand of the conductor was too remote a circumstance to be a basis for the assessment of damages.

Again, while it was proper to show that the transaction complained of was in the presence and hearing of other passengers on the train, there seems to have been no necessity, in order to prove this fact, to give evidence of the remarks subsequently made by passengers upon the subject; and such proof should not have been received as a ground for the assessment of damages. While the fact that plaintiff was so treated in the presence and hearing of others might properly be considered by the jury as naturally producing feelings of annoyance and shame, the particular comments made afterwards by other persons, and which constituted no part of the transaction, were not proper to go to the jury to enhance damages.

Order reversed.