[No. 647. Decided January 31, 1893.]

BESSIE M. WILLSON, *Respondent*, v. NORTHERN PACIFIC RAILROAD COMPANY, *Appellant*.

#### CARRIERS— EJECTION OF PASSENGER— DAMAGES.

The wrongful expulsion of a passenger from a car, although unaccompanied by physical force or violence, is actionable on the theory that, when the relation of passenger and carrier is established, a wrongful violation of the contract upon the part of the carrier is a breach of a public duty.

In such a case the sense of wrong suffered and the feeling of humiliation and disgrace engendered is an actual damage for which the injured party may recover compensation, such damages being compensatory and not exemplary. (STILES and HOYT, JJ., dissent.)

*Appeal from Superior Court, King County.*

*Mitchell, Ashton & Chapman,* and *Andrew F. Burleigh,* for appellant.

*Thompson, Edsen & Humphries,* for respondent.

The opinion of the court was delivered by

SCOTT, J.— On June 29, 1891, the respondent purchased a ticket from Vincennes, Indiana, to Seattle, Washington,

via St. Paul, Minnesota, over appellant's road.    On July 2d, soon after leaving St. Paul, the ticket exchanger passed through the train and took up the tickets of the passengers, giving them exchange tickets in return.    By mistake the respondent was given an exchange ticket to Missoula, Montana, instead of to Seattle.    The mistake was unnoticed at the time, and respondent traveled upon this ticket over the various divisions of appellant's road from St. Paul to Missoula, arriving there on the 4th day of July.    Just before reaching this point, the conductor of the train took up the respondent's ticket whereupon he was informed by her that her destination was Seattle; that her original ticket which had been taken up was purchased to that point.    After some conversation the conductor said to respondent that he would telegraph back and undertake to ascertain the facts and get the mistake rectified.    He did telegraph accordingly and received an answer stating that "Mrs. Walker's ticket was to Missoula, Montana."    It seems that a mistake was made in the name in sending this answer.    The conductor claims that he only sent one telegram and that this was an answer to it, and that the name of Mrs. Walker was evidently meant for Miss Willson.    He then informed respondent that she would either have to purchase a ticket to Seattle or he could not carry her any further than Missoula.

The price of a ticket from Missoula to Seattle was $30.30, and respondent did not have sufficient money with her to pay for one, of which fact she informed the conductor. Some of the other passengers had become interested in respondent's behalf, and protested against her being compelled to leave the train.    But the conductor insisted there was no other alternative, if she did not pay her fare for the remainder of the distance.    One of the passengers said to the respondent that if she was required to leave the train to do so, and that he would then purchase a ticket for

her from Missoula to Seattle, and that she could reënter the car and continue her journey. At Missoula the conductor again said to the respondent that she must pay her fare for the remainder of the distance or leave the train. Whereupon, respondent got up from her seat, but without taking any of her wraps or baggage, and walked out upon the platform, followed by the conductor and by the passenger aforesaid. The conductor held the train a few moments at this place while this passenger purchased a ticket for the respondent to Seattle. Whereupon she reëntered the car and resumed her seat, arriving at Seattle without any material delay.

Soon after her arrival at Seattle, the appellant's agents, having further investigated the matter, and having found there had been a mistake made in exchanging tickets with respondent, tendered her the sum of $30.30, which had been paid for the ticket from Missoula to Seattle. She declined to receive this, and brought an action for damages. A jury trial was had, which resulted in a verdict in her favor for $1,900. Upon a motion for a new trial, the superior court required her to remit $1,400 of this sum, which she did, and the judgment was allowed to stand for $500. Whereupon the railroad company appealed.

Appellant contends that the respondent should be limited in her recovery for damages to her actual money outlay; that she should not be allowed to recover anything for humiliation or mental suffering; that there was nothing in the treatment which respondent received which should cause any feeling of humiliation or mental suffering; that there must first be a physical injury as a foundation for such a recovery; that a recovery for more than the extra fare paid in this case would be, in effect, a recovery for punitive or exemplary damages, which are never allowed except in cases attended with insult, indignities or oppression, and are not recoverable in this state in any event.

*Spokane Truck & Dray Co. v. Hoefer*, 2 Wash. 45 (25 Pac. Rep. 1072.)

The respondent does not claim to have received any physical injury and was not subjected to any abusive treatment. She admits that the conductor treated her in a gentlemanly manner, and it appears she understood he was simply obeying the regulations of the railroad company in dealing with her as he did. The principal damages which respondent claims to have suffered were in the publicity given to the matter in having the attention of the other passengers attracted thereto, and in being put under obligations to the gentleman who purchased her ticket, in so being compelled to accept financial assistance from him, and in the sense of wrong which she suffered. By reason of these matters she claims to have been very much annoyed, humiliated and disturbed in her peace of mind. The respondent had no acquaintances aboard the train upon this occasion, except such as she had made upon the trip. She was twenty-one years of age, and had traveled some upon railroad trains before this time, but not extensively. Owing to her inexperience in this direction it seems she was an object of some solicitude on the part of her relatives in starting her upon this journey. An uncle purchased a through ticket for her, and accompanied her from Vincennes to Chicago, there putting her aboard the regular sleeping car for Seattle, so that she might travel through without a change of cars.

From an examination of many cases bearing upon these questions, we are led to the following conclusions: That there is no distinction to be drawn between a case like this, where the passenger vacates the car upon being told to do so by the conductor, and one where resistance is offered and no more force is used by the agents of the company than is necessary to eject, as the passenger has no right to resist, but must rely upon an action for damages. It is as

much a wrongful expulsion in one case as in the other. *C. B. & Q. R. R. Co. v. Griffin*, 68 Ill. 499; *Penn. R. R. Co. v. Connell*, 112 Ill. 295; *Hall v. Memphis, etc., R. R. Co.*, 15 Fed. Rep. 57; *Townsend v. N. Y. Cen. & H. R. R. R. Co.*, 56 N. Y. 295. Such actions are not necessarily founded upon a breach of the contract to carry, but properly lie in tort upon the theory that where the relation of passenger and carrier is established, a wrongful violation of the contract upon the part of the carrier is a breach of a public duty. An action of case would lie therefor at the common law. *Pouilin v. Canadian Pac. Ry. Co.*, 47 Fed. Rep. 858; *Yorton v. Milwaukee, etc., Ry. Co.*, 62 Wis. 367 (21 N. W. Rep. 516); *Walsh v. Chicago, etc., Ry. Co.*, 42 Wis. 23; *Head v. Georgia Pacific Ry. Co.*, 79 Ga. 358 (7 S. E. Rep. 217).

In this last case it will be observed that the syllabus with regard to the force used is somewhat at variance with the facts as stated in the opinion. It is apparent that there was no question of undue force or violence involved. Of course, no question as to the form of the action can arise under a system of code pleading where the facts are stated (*Hall v. M. & C. R. R. Co., supra*), and there is no attempt to raise any such question in this case.

By the great weight of authority it is well established that the sense of wrong suffered and the feeling of humiliation and disgrace engendered, if any, is an actual damage for which the injured party is entitled to compensation in this class of cases. *Smith v. Pittsburgh, etc., R. R. Co.*, 23 Ohio St. 10; *Chicago, etc., R. R. Co. v. Flagg*, 43 Ill. 364; *Chicago, etc., Ry. Co. v. Chisholm*, 79 Ill. 584; *Penn. R. R. Co. v. Connell, supra; B. & O. R. R. Co. v. Bambrey* (Pa.) 16 Atl. Rep. 67; *Quigley v. Central Pac. R. R. Co.*, 5 Sawy. 107; *Hamilton v. Third Ave. R. R. Co.*, 53 N. Y. 25; *Lake Erie, etc., Ry. Co. v. Fix*, 88 Ind. 381; *Chicago, etc., R. R. Co. v. Holdridge*, 118 Ind. 281 (20 N. E. Rep.

837); *Finch v. N. P. R. R. Co.*, 47 Minn. 36 (49 N. W.
Rep. 329); *Carsten v. N. P. R. R. Co.*, 44 Minn. 454 (47
N. W. Rep. 49); *Hoffman v. N. P. R. R. Co.*, 45 Minn. 53
(47 N. W. Rep. 312); *Penn. Co. v. Bray*, 125 Ind. 229 (25
N. E. Rep. 439.)

That such claims are here regarded as falling within the
class known as compensatory damages and not exemplary,
see *Spokane Truck & Dray Co. v. Hoefer, supra.*

Those cases to which our attention has been called, most
directly in point in support of the proposition that there can
be no recovery for wounded feelings, etc., where the agents
of the railroad company acted in good faith and used no
unnecessary force in ejecting the passenger and subjected
him to no insult or other indignity in so doing, are *Fitz-
gerald v. C. R. I. & P. R. R. Co.*, 50 Iowa, 79, and *Paine
v. C. R. I. & P. R. R. Co.*, 45 Iowa, 569. Also see *Dorrah
v. Ill. Cen. Ry. Co.*, 65 Miss. 15 (3 South. Rep. 36), and
*Trigg v. St. L. K. C. & N. Ry. Co.*, 74 Mo. 147. The
two cases first cited from Iowa fairly sustain the doctrine
contended for by appellant. It is apparent, however, that
the feelings are not as deeply involved in cases like those
as in the one we have under consideration; and the same is
true in a greater degree of the two succeeding cases cited.
In the *Paine* case, 45 Iowa, 569, the passenger had been
unable to procure a ticket at the ticket office of the com-
pany, and upon going aboard the train he refused to comply
with the rule requiring passengers to pay ten cents in addi-
tion to the regular fare where payment was made upon the
train. The *Fitzgerald* case, 50 Iowa, 79, involved the right
of a passenger to ride upon a freight train, in violation of
the rule of the company prohibiting passengers from board-
ing freight trains except at the depot, and forbidding con-
ductors to permit passengers to get upon the train after it
had left the depot.

The two cases last cited, in the Third Southern and

Seventy-fourth Missouri, are cases where the passenger had been carried by his point of destination.    It is evident that in all these cases the feelings of the passenger were not as deeply involved as in the present case.    No imputation of falsehood could possibly arise from the circumstances.    A party claiming to have purchased a ticket for a greater distance than the one he held entitled him to ride, might have his word doubted by fellow passengers.    Very likely different opinions would be entertained as to the truthfulness of such a claim by the other passengers.    He might be believed by some and disbelieved by others.    A passenger realizing this, and that he might thus to some extent become an object of suspicion, would feel more or less mortified thereby.    It is true, different individuals would suffer in greater or less degree.    To some, perhaps, it would amount to no more than a trifle, while in other cases it might be severe.    This, of course, would be a question for the jury to determine.

The case of *Johnson v. Wells, Fargo & Co.*, 6 Nev. 224, was also cited by appellant as sustaining the position it contends for, but it is evident, so far as these cases are in point, that they are completely overborne by the cases previously cited.

The contention that there can be no recovery for such damages where there has been no direct physical injury, is clearly untenable under the weight of the authorities.    Nor is the right to recover therefor limited to this class of cases.    See *W. U. Tel. Co. v. Cooper*, 71 Tex. 507 (9 S. W. Rep. 598); *W. U. Tel. Co. v. Simpson*, 73 Tex. 422 (11 S. W. Rep. 385), and *W. U. Tel. Co. v. Rosentreter*, 80 Tex. 406 (16 S. W. Rep. 25), which were cases involving failure to deliver telegrams furnishing information of the illness and death of relatives.

The respondent excepted to the order of the court requiring her to remit $1,400 from the verdict.    She insists

upon this appeal not only that the judgment should be affirmed, but that the original amount which the jury found she was entitled to should be reinstated; and she claims that, having taken an exception thereto and preserved the question of record, it is properly before the court. A number of cases have been cited by her as to the right and power of courts to interfere with verdicts in such matters. We do not feel called upon to undertake a review of them, as the law is too well settled that, where it appears that a verdict is excessive, and that the jury must have been influenced by passion or prejudice in finding so large an amount, the court will reduce it. This is firmly established. Under the circumstances of this case we think that $500, the amount for which the judgment was rendered, was amply sufficient to cover any possible injury plaintiff sustained.

Affirmed.

DUNBAR, C. J., and ANDERS, J., concur.

STILES, J. (*dissenting*). — I dissent. With the law of this case as laid down by the majority of the court I have no controversy. The weight of authority in such cases is, that where a common carrier by mistake gives a passenger a ticket short of the destination for which he has paid for transportation, the action is in case for the tort in the company's failure to perform what was its duty as a carrier. And it is also well established that where there are circumstances such as would cause inconvenience, distress or mortification to the passenger, the measure of damages includes compensation therefor. But I deny that this case furnishes any facts sufficient to justify the verdict rendered, or even the judgment entered, upon any theory of compensation.

The evidence shows that the mistake was not discovered until the train had passed west of Helena, between which place and Missoula the distance is about a hundred miles. As soon as the conductor learned of respondent's claim, he,

of his own motion, telegraphed to St. Paul with a view of
having the error corrected.    While waiting the reply, the
respondent rode comfortably along in the sleeping car, and
was in the dining car when the train reached Missoula, and
the conductor received his answer from St. Paul and read
it to her.    This answer said: "She will have to purchase
another ticket to Seattle, and take receipt, and take matter
up with selling agent," and it left the conductor no alter-
native in the line of his duty, which he proceeded to per-
form in a gentlemanly and entirely friendly manner.    He,
upon his own responsibility, offered to carry her to Hope,
Idaho, 173 miles beyond Missoula, and where his division
ended, without a ticket, because, in the meantime, he ex-
pected, by telegraphing again to St. Paul, to be able to
straighten the matter out; but he advised her that Hope
would be reached about 3 o'clock in the morning, and that
it would be less trouble to her if she bought a ticket from
Missoula and afterwards got her money back.    The talk
about the matter took some fifteen minutes, during which
the train was held to await her decision.    But other pas-
sengers' advice prevailed, by holding out the idea of dam-
ages, and she determined to stand upon her legal rights and
be "put off."    Now, it is perfectly idle to say that this
young lady was ever put off the train.    She had been told
she could continue her journey at least as far as Hope, and
the train was standing at Missoula.    But she determined
not to go on, and in order to make out the necessary case
of ejection from the car was compelled to ask the conductor
to put her off, which he obligingly did by saying: "Come
on, then," and himself walking out.    She followed, with-
out wraps or baggage, which she left in her seat, and when
she had reached the platform the gentleman who afterwards
bought her ticket said: "Well, have you put her off?" to
which the conductor pleasantly answered, "Yes."    That

is absolutely all there was of it, and constitutes the sole basis for this extraordinary recovery.

As to the elements of damage it is said that she suffered from the apprehension that she might have to leave the train; that she was under the imputation of having told an untruth about her ticket; that she had to step out of the car, and that she was humiliated by having to accept a loan from a stranger.    As to the first matter her disturbance of mind could not have been very severe, and it certainly continued less than half an hour.    Concerning her veracity, there is no evidence whatever that anybody doubted it. The conductor believed her, and said so, and proved it by offering to carry her nearly two hundred miles west of Missoula at the risk of having to pay her fare himself; and she says herself that all the other passengers believed her and sympathized with her, and one of them, a perfect stranger, voluntarily paid upward of thirty dollars for her account. She need not have stepped out of the car at all for, as was held in *Railroad Company v. Griffin*, 68 Ill. 499, cited above, her cause of action was completed by the requirement to pay fare a second time.    She left the car solely for the purpose of perfecting her right to substantial damages, fearing that the technical wrong that had been done to her in taking away her ticket and returning the short check would not sustain a suit unless she actually left the car.    Doubtless her mind and those of her advisers would have been made easier if the conductor could have been induced to put his hand upon her, however formally, during the process of ejection.    The last item, the acceptance of the loan from Mr. Adams, is unworthy of consideration. She was not compelled to do so, and no such thing was ever contemplated in the contract.    She could have ridden on to Hope, and probably in the time it took to go there the conductor could have had his order to carry her through

to Seattle.    The loan was simply another means of making up a case.

Technically, nominal damages over the cost of the ticket from Missoula to Seattle, $30.30, should have been allowed, perhaps; but the jury, under a general instruction that they could find damages for "injury to her feelings for the indignity suffered and for humiliation, for disgrace, for wounded pride," without any fact upon which to base a finding of even a sentimental injury, and disregarding the law as laid down by the court, that compensation only could be recovered, assessed the damages at an outrageously punitive sum, a very substantial part of which is still permitted to stand.

I see no reason why railroad companies should be subjected to such penalties for unintentional mistakes, and in my judgment it is idle to say that the submission of the case to a jury makes such an excessive judgment any the less a rank injustice.    If the jury had brought in a verdict for $100, and the trial court had not interfered, I should have been willing to accept it, although not by any means admitting that injury to any such extent was suffered by respondent.    For a recent case where there was an actual injury occurring through negligence of the railroad company to perform a duty, the passenger being actually put off and left, and where the supreme court of Minnesota divided a judgment of $500 in half, with evident doubt whether so much should be allowed, see *Finch v. N. P. R. R. Co.* (Minn.), 49 N. W. Rep. 329.

HOYT, J., concurs.