# SUPERIOR COURT OF BALTI-MORE CITY

Filed October 14, 1895.

AGNES AND MARTIN CURLANDER

VS.

PULLMAN'S PALACE CAR COMPANY.

*William L. Marbury* and *William L. Hodge* for plaintiffs.

*Rich & Bryan* for defendant.

RITCHIE, J.—

This suit is brought on behalf of Mrs. Curlander to recover damages for having been ejected from a certain section in one of the defendant's sleeping cars. So far as it is necessary for me to refer to the facts in the case, they are as follows: On the 30th of September, 1893, Mr. Curlander and his wife, the plaintiffs, left Baltimore upon the Baltimore & Ohio Railroad for Chicago; on the same day some gentleman and his wife, whose names are not known, but whom I will designate as Mr. and Mrs. "X," boarded the same train at Washington for the same city. All parties were entitled to a first-class passage to Chicago.

Mr. X had bought and paid for the use of section number one on the Pullman Sleeper, "Valley Falls," attached to said train, from Washington to Chicago, and held a ticket for the same. The only restriction printed upon this ticket was "Good for this date and car only when accompanied by a first-class railroad ticket." During the day the Pullman conductor took up this ticket and gave Mr. X in lieu thereof a check for the use of the section in question. This check showed on its face the same trip, that is, from Washington to Chicago, and the only limitation on it touching its use was. "This check is good for this trip only." On the evening of the same day, at Pittsburgh, Mr. Curlander bought for himself and wife the upper berth of section six in the same car and paid for its use from that point to Chicago. On the next morning, after the car had been arranged for day travel, it was found that the seats which went with the upper berth were those which faced the rear of the car and required the plaintiffs to ride backwards. After riding a short time in this position Mrs. Curlander had a severe attack of nausea; observing her sickness Mrs. X invited her to a seat in her section, where she rode facing the engine, and was much relieved by her change of position. Mrs X then told her that she and her husband would soon leave the car, having determined to get off at Deshler, a station about seven hours distant from Chicago, and said that her husband would give their section to Mr. Curlander so that she would not have to ride backwards. On leaving the train at Deshler, Mr. X, accordingly told Mr. Curlander that he might have his section for the rest of the trip; and transferred to him the check which he held for the same. A little further on, at Defiance, the Pullman conductor, knowing that Mr. and Mrs. X had left the train, sold the section over again from that point to Chicago to parties who boarded the train at that station. Upon bringing these persons to the section he found it occupied by the plaintiffs. Being requested to vacate and return to their former seats, Mr. Curlander told the conductor that the section had been given to him by Mr. X and showed him the check which he held therefor, offering to the conductor at the same

time the use of his two seats in section six. An altercation ensued, the conductor of the train was called in, and while there is some conflict as to whether the ejection was the act of defendant or of the train conductor, the plaintiffs were compelled to vacate the section. Soon after returning to her former seat, Mrs. Curlander again suffered from severe nausea and continued to do so until she reached Chicago. The plaintiffs remained in Chicago without special incident until October 10th; meanwhile, from time to time, visiting the World's Fair, and on that day Mrs. Curlander was taken with an illness peculiar to her then condition. She started for home on the 12th and though she had not then entirely recovered, she seems to have suffered no material after effects from this sickness. This sickness also is included as an element in the claim for damages.

The sleeping car belonged to defendant and was attached to this train under contract with the railroad company, the defendant being entitled to all proceeds from the sale of seats or berths.

The important question at the threshold of this case is as to the right of Mr. X on leaving the train, to transfer the use of his section to Mr. Curlander for the rest of the trip to Chicago. Neither the able counsel nor the Court have been able to find any case in which this question has been passed on, or any textbook in which the author expresses an opinion upon it. It is conceded that the ticket for a section on a sleeping car is transferrable by delivery at any time before the holder enters upon the journey for which it is purchased, but it is contended that if he once enters upon his trip and leaves the train before arriving at his destination, he abandons or forfeits his right in such section for the balance of the trip for which it was sold.

If this be so, the passenger having bought and paid for the use of the section for the whole of the designated trip, the restriction against the transfer must be found either in the express terms of the contract, by implication from its terms, or by construction, from the nature of the contract. There is no express provision against transfer, and the defendant contends that the restriction arises from the nature of the contract and also by implication from some of its terms.

In the absence of authority upon the direct question as affected by the nature of the contract, the defendant relies upon a supposed analogy between the contract of carriage by a railroad company and a contract for the use of a section on a sleeping car, and invokes the rule of construction which is applied to the contract of carriage. It is well settled that the usual contract of carriage from one point to another on the same road is an entire contract, involving a continuous trip, though the ticket be silent in this respect, and that when the passenger has once selected his train and started upon his journey, he has no right to stop over at an intermediate point and then resume his journey upon another train on the same ticket. Such a contract is construed to import a continuous trip by the same train because of the nature of the undertaking. The reasons for such construction are fully stated in McClure's case, 34 Md. 532, and the numerous other authorities cited by defendant. But, assuming the analogy claimed, these cases would not control the question here, because in this case there was no effort made to use this section check on a later or another train, but only on the trip for which it was issued. It may be, as defendant contends, that a continuous trip under a contract of carriage, means a continuous trip by the same person as well as on the same train, though I intimate no opinion on that point, but while there are two cases submitted by defendant, in which the Courts say *obiter*, that such is the law, they, and all others, were cases in which the original holder or assignee of a partly used railroad ticket good only for a continuous trip, attempted to use it on another train. Some of the reasons given why the same holder cannot resume his journey on another train, might apply to the case of the use of the ticket by another person on the same train, while others would not.

But assuming that the railroad contract of carriage means a continuous trip by the same person, and on the same train, is there anything in the nature of the contract for the use of a section on a sleeping car that requires a similar construction? The defendant claims that the contracts

are analogous, and should receive a like construction. I do not think so. The two contracts are essentially different in character; they are made with different companies, relate to different subject-matters, and are perfectly distinct in their undertaking. The contract with the railroad company is a contract to carry; the contract with the Pullman Company has nothing to do with the transportation of the passenger, and has no relation to the contract of the railroad company further than that the Pullman ticket, or check, is not good unless accompanied by a first-class railroad ticket. The contract for the use of a section is described in the text-books and in the regulations of the company as a contract of sale—a sale of a given "space" in a designated car. It is a hiring or a quasi lease of the section, and gives to the passenger the right to the use of the same with its comforts and conveniences between the points designated on the ticket. This is the right sold and the right paid for. The Pullman Company has no active service to perform under its contract with the passenger; it has only to permit him, without interference, to have the use of the section it has sold him. So far as it does in fact carry the passenger in one of its cars, that is a matter of contract between it and the railroad company, with which alone the contract of carriage is made. The railroad company will carry him in one of its own coaches; or if he contracts with the Pullman Company for the use of a section, the railroad company provides for his transportation in a Pullman car by its contract with the Pullman Company. The distinct character of the contract made by the passenger with each company is shown in Ulrich's case, 108 N. Y. 80.

When the passenger has selected his train and has called on the railroad company to perform its contract and carry him to his destination, and the company tenders itself ready to perform, and furnishes the necessary means and accommodations, there is good reason why he should not be permitted to stop off at one or more intermediate stations, and afterwards resume his journey on the same ticket. Under the contract of carriage, the railroad company must furnish accommodation and has active services to

perform, and when it has once responded to the demand of the passenger and has partly performed its duty and stands ready to perform the rest, it would be unreasonable to require it to stand ready again and again to respond to the call of the passenger according as he may please to break his journey. Further reasons stated in the authorities why the railroad contract is construed to mean a continuous trip by the same train are that the contrary doctrine would impose on the carrier additional duties, the removal of the passenger and his baggage from one train to another, an increased risk of accidents, and a hinderance and delay not contemplated. It is contended that the same reasons, or some of them, prevent the passenger when leaving the train from making a valid transfer of his railroad ticket to some one else for the rest of the trip; and further, that the same considerations require a similar construction of the contract made with the Pullman Company. But from the different nature of the contracts, none of these reasons apply in the case of the sale of a section in a sleeping car, and they do not require that a continuous trip under the Pullman contract should be construed to mean a continuous trip by the same person. The contract being for the use of a given section on a given train, necessarily imports a continuous trip by that train, and the Pullman Company needs no protection against a demand for the use of the same section on the same ticket on a later day; no additional duties are imposed on the Pullman Company by allowing the transfer of his section for the rest of the trip by a passenger who leaves the train; it is not subjected thereby to any additional risks, nor to any hinderance or delay; it handles no baggage, no additional attentions are required, and it makes no difference whether the porter makes up the berth and dusts off the seat for one passenger or another. The company sells the use of its section with the right to some trifling services from its porter from one point to another and is paid in full for the same; it can make no possible difference to it whether the section is occupied by one first-class passenger or another, and whoever may hold it, the company can be called upon to do or furnish nothing that it has not agreed

to and been paid for. If the holder leaves the train without transferring his section, it might be inferred that he had abandoned it to the company and it might be resold, but when the company undertakes to sell again what it has already once sold and been paid for, it does so at the risk of trespassing upon the rights of others.

It is held in Searle's case, 45 Fed. Rep. 330, that the purchaser of a section may share its use with any proper persons whom he invites into it; this is because he has purchased the use of the whole section, and as he can bestow on others the right to use part of it while he is there, I can see no reason why he cannot confer upon them the right to continue the use of it when he leaves the train before the end of the trip for which it has been sold. It is also conceded, as I have said, that the purchaser may transfer his section before he enters upon his journey. I can see no reason why it should become absolutely non-transferrable the moment after he starts. I can see no reason why he cannot transfer it immediately after starting if he chooses to ride in a passenger coach; or why two passengers might not exchange sections; or why, after having gone half of his journey, the holder might not then transfer his section for the balance of the trip, and himself withdraw into a passenger coach. It is conceded that he can make such transfers as long as he remains on the train, provided he gives notice to the conductor and gets his assent. But the assent of the defendant to such transfers is not necessary, because there is no condition in the contract which requires it. If the holder of the section, after having gone part of his journey, can transfer it to another for the rest of the trip, he himself continuing on the train but riding in a passenger coach, as I think he can do, he can make a valid transfer on leaving the train, because it makes no difference to the Pullman Company, which has nothing to do with his contract of transportation, whether he withdraws into a passenger coach or leaves the train.

It is further contended that the condition on the ticket that it is good "only when accompanied by a first-class railroad ticket," and the limitation on the conductor's check that it is "good for this trip only," and the fact that the through rate from Washington to Chicago is less than the aggregate rate of a section from Washington to Deshler and then from Deshler to Chicago, imply a restriction against transfer after the holder has once started. I cannot accept this view. The condition on the ticket is simply a designation of the class of persons who alone are entitled to avail of the conveniences of the sleeping car; it would prevent the transfer of a section to one who did not hold a first-class railroad ticket, but the conditions rather implies that such cars are open to all who do have such tickets. "This trip" means the trip stated on the face of the check upon which is found the restriction, that is, from Washington to Chicago. No attempt was made to use it on any other trip than the trip for which the check expressly states that it was good. Even if "this trip" under the contract of carriage, would from its nature be construed to mean a trip by the same person as well as on the same train, there is nothing, as I have endeavored to show, which would require these words to receive the same construction under the contract in question. To construe this condition as meaning "good for this trip only *and good only in the hands of the holder who starts with it*," would be nothing less than interpolating a material condition not in the contract.

There is nothing in the fact of a reduced rate which implies non-transferability. It may well be that the company prefers by one transaction to sell a section for a long trip at a reduced rate rather than chance its sale at higher local rates to several successive purchasers between intermediate stations. It is settled that the usual return coupons of round-trip excursion tickets, which are always sold at reduced rates, are transferrable. Carsten's case, 44 Minn. 454; Hoffman's case, 45 Minn. 53; Sleeper's case, 100 Pa. 257; and where a through straight ticket over several roads is sold at a reduced rate, the passenger at the end of any one road, may transfer any remaining coupons. Nichols case, 23 Oregon, 123. The conditions on a railroad ticket that in consideration of a reduced rate it is not transferrable is good, but non-transferrability will not be implied from the mere fact of a reduced rate. If the reduced rate does

not affect the right to transfer the railroad ticket, there is no reason why it should prevent the transfer of the Pullman ticket.

It follows from what I have said that, in my judgment, the transfer of the section in question to Mr. Curlander was valid and the ejection of his wife therefrom was wrongful. There being no restriction upon its transfer in the terms of the contract, except as against such as are not first-class passengers, nor in the nature of the contract, or to be implied from any of its conditions, there certainly are no considerations of public policy or convenience which call on the Court to so contrue the voluntary contracts of this defendant as to enable it, contrary to the wishes of the first purchaser, to sell the same thing twice.

Whether the ejection of Mrs. Curlander was the act of defendant or of the train conductor, as well as the measure of damages, I will leave to the jury under the instructions to be granted.