WESTERN UNION·TELEGRAPH COMPANY V. OTTO ROSENTRETER.

No. 2928.

1. **Citation of Nonresident Corporation by Service on Agent.**—The citation held good is as follows:   "The State of Texas, to the sheriff or any constable of Washington County, greeting:   You are hereby commanded to summon the Western Union Telegraph Company through Mrs. L. M. Miles, its local agent at Brenham, Texas, who represents said company at said place and who is alleged to reside in said Washington County, to appear at the next regular term of the District Court of Washington County, to be holden at the court house thereof in the city of Brenham on the first Monday in March, 1890,  *  *  *  in a suit numbered on the docket of said court 6791, wherein"—repeating the names of the parties, with a statement of the cause of action, and duly attested.

2. **Continuance—Failure in Diligence.**—Suit was filed February 13, 1890. Citation was served on February 14 on local agent of the Western Union Telegraph Company, a nonresident corporation. Court convened March 3. On appearance day, March 7, the case was set for trial on March 10. On that day interrogatories were filed by defendant for the purpose of taking depositions of an employe residing in Galveston County, Texas. On March 10 application for continuance was properly refused for want of diligence.

3. **Practice in Supreme Court.**—An assignment of error can not be considered on appeal unless the record shows that the ruling complained of was made by the trial court. See example.

4. **Same—Statement of Facts—Charge.**—Charges asked by the telegraph company were refused by the trial judge. The charges related to conditions limiting its responsibility. The s ament of facts not showing the introduction in evidence of the alleged conditions the refusal of the charges can not be revised on appeal.

5. **Practice in District Court—Testimony.**—We think it clear as a matter of practice and of law that the identification of a written instrument for the purpose of introducing it in evidence is not equivalent to its introduction in evidence in fact before the court and jury.

6. **Duty of Telegraph Company — Charge.** — The trial judge having charged the jury that "the question of diligence is one to be determined by the jury from all the evidence; to find for the defendant if they found from the evidence that its agent was not guilty of negligence but had exercised reasonable care and diligence in getting the message through; that the defendant should be held to the exercise of such care and diligence as would be reasonably adequate to a faithful discharge of its duty;" elsewhere making its liability depend directly upon proof of negligence on its part or of its agents and employes; and that defendant would not be liable as a common carrier would be as an insurer. *Held*, that having so instructed the jury it was proper to refuse instructions asked as to the effect of conditions attached to the message sent, which conditions were expressly limited to cases wherein there was no negligence on part of the telegraph company.

7. **Unavoidable Interruption.**—The clause that "the company will not be liable for delays arising from unavoidable interruptions in the working of its lines" would refer to such as are caused by electrical disturbances, or others beyond the control of the telegraph company. It would not include delay caused by a surrender of the only wire from the point of sending to the exclusive use of the railway company along whose track the telegraph line was placed.

8. **Same.**—That the only wire owned by the telegraph company was surrendered to *the train dispatcher's* use and was by him used for several consecutive hours, there being no necessity for such use shown, will not be received as of itself an excuse for

delay of the telegraph company in sending a dispatch which it had received for transmission in due course of business.

**9. Duty of Telegraph Company.** — When the business of a telegraph company can not be transacted by one wire others should be provided equal to its business.

**10. Telegraph Service on Sunday.**—It was in evidence that work as a general rule was suspended on Sunday from 10 a. m. to 4 p. m. The court excluded this period from the working time during which diligence was to be exercised by the defendant company. This was favorable to the defendant. It appeared that work was not in fact suspended, but was carried on by the *train* dispatcher. Telegraph companies are relieved from the operation of the Sunday laws, not for the benefit or at instance of railways alone.

**11. Telegraph Message, Explaining its Importance.** — A dispatch, "Emma died last night; will be buried this evening," sufficiently explains its importance.

**12. Contributory Negligence.**—That a dispatch announcing a death in the family of parties communicating by telegram was delayed before it reached the telegraph office is irrelevant and can not be urged as contributory negligence in an action against the telegraph company for negligence in sending after receiving it.

**13. Verdict Not Excessive.**— Plaintiff recovered $1000 damages of the defendant telegraph company for negligent delay in delivering him a telegram announcing the death of his sister. By the delay he could not attend the funeral. *Held*, that the amount was not excessive, nor could it be presumed that the jury acted from any improper motives.

APPEAL from Washington. Tried below before Hon. C. C. Garrett.

The statement of the case as made in appellant's brief, with some slight alterations which we have made, will disclose substantially the case. Some omissions therein will be hereinafter supplied from the record. The statement is as follows:

"This suit was begun by Otto Rosentreter filing his petition on February 13, 1890, in the District Court of Washington County, Texas, asking for $2000 damages against the Western Union Telegraph Company for the grief, disappointment, and mental anguish suffered by the said Otto Rosentreter, caused by the Western Telegraph Company (negligently) delaying to promptly transmit (and deliver) a certain telegraphic message from the town of Lyons, in Burleson County, Texas, to the appellee in the city of Brenham, Texas, whereby the said Rosentreter failed to reach Lyons in time to attend the funeral of his sister Emma, and 'give comfort and consolation to his aged mother in an hour of great disappointment.' The message in question was filed for transmission at Lyons, Texas, on April 7, 1889, it being Sunday. The message was written by August Grabbo and handed by him to defendant's operator at Lyons, George A. Smith. It reads as follows:

"'*To Otto Rosentreter, care of Louis Grassmuck, Brenham:*

"'Emma died last night; will be buried this evening.
          [Signed]                                "'AUGUST SCHOPPE.'

"The message was handed to operator Smith about 8 o'clock on the morning of the 7th by August Grabbo, and at the time Smith told

Grabbo that the wire was crowded with train orders, and also that it was Sunday and the Brenham office was closed between the hours of 10 o'clock a. m. and 4 o'clock p. m., so that the message would probably not be delivered before 4 o'clock that afternoon. Grabbo replied to do the best he could with it. Operator Smith did not know Otto Rosentreter, August Schoppe, or Emma, or what relationship, if any, existed between the Emma mentioned in the message and Otto Rosentreter, or that the appellee had an aged mother to comfort, and nothing was said at the time of filing the message as to any relationship, or that Otto Rosentreter was expected up on the noon train, August Grabbo testifying that he thought the message explained itself.

"Operator Smith testifies that he remained at his instrument from 8 o'clock a. m. until 2 o'clock p. m. endeavoring to transmit the message, with the exception of a short time he was attending to the mail and his duties as agent, but was unable to obtain control of the wire to transmit the message until 2 p. m. on account of its being in charge of the train dispatcher, who was constantly using it for sending train orders, there being a rush of stock. The message had to be sent to Galveston and 'relayed' to Brenham. The Brenham office was closed from 10 a. m. until 4 p. m. The message reached Brenham about 4 p. m., and was promptly delivered to Louis Grassmuck (and by him to appellee at 4.15 p. m).

"The train going from Brenham to Lyons left Brenham about 11 o'clock a. m. and reached Lyons, a distance of nineteen miles, in about forty-five minutes. Emma, the sister of appellee, died at her home about a mile from Lyons at about 6 o'clock on the evening of the 6th of April, 1889, and the message, about the delay in the delivery of which this suit was brought, was not filed for transmission until about 8 o'clock on the morning of the 7th of April, over twelve hours after the death of the said Emma. The appellee testified that he was living in Brenham, only nineteen miles from his sister, or a ride of only forty-five minutes, and that he had not visited his sister for about three months before her death, though he testified that he was expecting to hear of her death at any moment and could easily have obtained permission of his employer to visit her; that he did not go to Lyons for several weeks after the death of his sister Emma, though he could have easily obtained the permission of his employer, Mr. Grassmuck, to do so. The cause was tried by a jury March 10, 1890, and verdict and judgment for appellee for $1000."

It is deemed proper to insert in this connection the balance of the facts proved which are proper to be considered in the solution of the questions presented on this appeal. The following from the brief of appellee is found to be substantially correct:

"The telegram was delivered to the operator at Lyons, a station nineteen miles from Brenham, at 8 o'clock a. m., and was delivered in

Brenham at fifteen minutes past 4 p. m.   The regular passenger train passed Brenham at that time about 11.30 a. m. and arrived at Lyons about 12.30 p. m.

"The witness August Schoppe testified that Emma, the sister of appellee, died near Lyons on the evening of the 6th of April, between 6 and 7 o'clock; that on the morning of the 7th of April he went to Lyons to send a dispatch to appellee; that he reached Lyons about 7 o'clock a. m. and found the telegraph office closed; that he went to August Grabbo and requested him to deliver it to the operator when he came down to the office; that the funeral was postponed until evening, so that the appellee could be present.

"August Grabbo testified that he delivered the telegram to the operator as soon as the office was open, between 8 and 9 o'clock; that he went to the office, asked for a blank, wrote the message, paid him 25 cents, and asked him if he could send it, and he replied by saying that he only had one instrument; that they only had certain hours to work on Sunday; that the wire was crowded, etc.

"George A. Smith, the operator and witness for the appellant, testified that he remembered receiving the message from Grabbo, who requested him to send it as soon as possible.   It was on Sunday, and the Western Union office at Brenham was open from 7 to 10 a. m. and from 4 to 6 p. m.   That he had but one wire and it was constantly in use by the dispatcher, who was using it all the time for train orders.   I told Grabbo the office was closed during certain hours on account of it being Sunday, and that I did not think it could possibly be delivered before 4 or 5 o'clock, as it had to be relayed at Galveston and I thought the Brenham office would be closed from 10 o'clock to 4.   That he left his instrument about half an hour attending to the mail and his duties as station agent.   The wire was crowded with railway business.   We often have such a rush.   That if the other office had been doing business in Brenham it might have been sent there.   I could send a train order, but could not get the wire for messages.   That the dispatcher controls the wire, and whenever he wants an office he calls them.   He can deliver the wire to any office.   Any office can communicate with him at any time.   That ten minutes would be a reasonable time to send a message from Lyons to Brenham via Galveston.   That he could have communicated with the depot at Brenham over the railway wire, but could not have handled Western Union business over it.   That he did not try for this message.   That the wire belonged to the Western Union Company.   That he could have had communication with the dispatcher, who could have given him control of the wire to have sent this dispatch.   That he did not try to get in communication with the dispatcher and tell him that he had an important message to get off.   An important message is a 'rush message.'   A message announcing the death of a party is called a 'rush message.'   This message announced a death.

That he was both railroad agent and operator at Lyons, and his duties were somewhat double. From the telegram he thought they expected Otto to come on the train. That if he had had another wire communicating directly with Brenham he thought he could have got the message off between 8 and 11 a. m. Since that time another wire has been put up."

Again, on the question of damages it was proved that "the appellee was working for Louis Grassmuck, in Brenham. His sister was in bad health, and he had made arrangements to be telegraphed for in the event of her death. Appellee testified that he was very much disappointed and grieved at not being able to be present at the funeral of his sister. That he would not have missed it for anything in the world.

The witness Grassmuck testified that he delivered the telegram to appellee; that he seemed very much grieved and distressed at not being able to be present at his sister's funeral; that they went down to the depot to see if he could get a freight train to go to Lyons on; that he could not get a freight train, and he seemed very much distressed. He cried and said he wished he could have gone.

The witness August Schoppe testified that he expected the appellee up on the train and was at the depot to meet him, and that the funeral was put off until after the arrival of the train so he could be present.

[This statement accompanied the opinion.]

*Stewart & Stewart*, for appellant.—1. Telegraph companies may limit their liabilities for delays and errors in transmitting and delivering messages either by express contract or by regulations printed and brought to the notice of those dealing with them. Telegraph Co. v. Neill, 57 Texas, 283; Womack v. Telegraph Co., 58 Texas, 176; Telegraph Co. v. Rains, 63 Texas, 27; Telegraph Co. v. Hearne, 77 Texas, 83; Beasley v. Telegraph Co., 39 Fed. Rep., 181.

2. One sending a telegraphic message is charged with notice of the printed conditions of the blank form on which the message is written, when no attempt is made to conceal said conditions. Womack v. Telegraph Co., 58 Texas, 176; Telegraph Co. v. Edsall, 63 Texas, 675; Gray's Com. by Tel., 52, note 2.

3. Telegraph companies are not insurers. From the peculiar nature of their employment they are not held to the same strict degree of responsibility as common carriers, but are held only to a reasonable degree of care and diligence, and the burden was on the plaintiff to show that due care was not exercised to enable him to recover. Telegraph Co. v. Neill, 57 Texas, 283; Telegraph Co. v. Edsall, 63 Texas, 674; Womack v. Telegraph Co., 58 Texas, 176; White v. Telegraph Co., 14 Fed. Rep., 710; Breese v. Telegraph Co., 48 N. Y., 132; Fowler v. Telegraph Co., 80 Me., 381; 6 Am. S. Rep., 211; Beasley v. Telegraph Co., 39 Fed. Rep., 181.

4. In case of delay, in the absence of any special contract, the actual cause of the delay is open to inquiry and explanation in case of common carrier, and unless the carrier be at fault he is not liable for the damage which ensues. A telegraph company is not held to that strict degree of responsibility that a common carrier is. 3 Suth. on Dam., 213; Pierce on Am. Railroad Law, 489; 2 Redf. on Law of Railway, 9; Taylor v. Railway, 1 C. P., 385.

5. A telegraph company can not give preference in transmitting messages to one person or corporation over another. Railway v. Smith, 63 Texas, 322; Telegraph Co. v. Ward, 23 Ind., 377; U. S. Telegraph Co. v. W. U. Telegraph Co., 56 Barb., 46; Davis v. Telegraph Co., 1 Cin., 100.

6. A telegraph company is not held to such a strict degree of responsibility as a common carrier, and if its wires become crowded with an unexpected rush of business it is not liable for the damage caused by the delay in transmitting messages caused by the crowded condition of the wires when the telegraph company uses reasonable diligence in endeavoring to transmit the message as soon as possible, especially when the sender is made aware of the crowded condition of the wires and the fact that his message would not be transmitted for some time. Railway v. Smith, 63 Texas, 322; Ayres v. Railway, 71 Wis., 372; Hutch. on Carr., sec. 292; Lovett v. Hobbs, 2 Shaw, 127; 2 Am. and Eng. Encyc. of Law, 790; Railway v. Dawson, 70 Mo., 296.

7. The Western Union Telegraph Company had the right to close its office at Brenham from 10 a. m. until 4 p. m. on Sundays. Rev. Stats., art. 2835.

8. In an action *ex contractu*, unless the breach is shown to have been occasioned by the misconduct, fraud, or want of due care of the telegraph company, its servants or agents, the measure of damage is the price agreed on. Telegraph Co. v. Neill, 57 Texas, 283.

9. The court erred in refusing to present the fourth special charge asked by the defendant, which is as follows: The message must either show on its face what relationship existed between the Emma mentioned in the message and the plaintiff Otto Rosentreter, or information must have been given at the time the message was filed of the relationship that existed between Emma and plaintiff; in short, defendant must have knowledge of the relationship that existed between the parties, or it is not liable for any special damages that might result to plaintiff by reason of injury to his fraternal feelings in not being present at the funeral of the Emma mentioned in the message; and if you find that the defendant did not have such knowledge of the relationship that existed you will find against defendant only for the price paid for sending the message; provided that you find that defendant was negligent in the transmission and delivery of the message. Daniel v. Telegraph Co.,

61 Texas, 456; Gray's Com. by Tel., 23, 148; 3 Suth. on Dam., 303; Leonard v. Telegraph Co., 41 N. Y., 544; 2 Pars. on Con., 300; Baldwin v. Telegraph Co., Allen Telegraph Cases, 644; Sedg. on Meas. of Dam., 413.

10.   One who is injured by the mere negligence of another can not recover at law or in equity any compensation for his injury if he, by his own or his agent's ordinary negligence or willful wrong, proximately contributed to produce the wrong.   The question is not whether the fault of the plaintiff caused the injury, but whether it contributed to it.   Railway v. Smith, 52 Texas, 183; Railway v. Smith, 59 Texas, 406; Railway v. Wallen, 65 Texas, 568; Railway v. Clemmons, 55 Texas, 88; Railway v. Richards, 59 Texas, 373; Railway v. Murphy, 46 Texas, 365; 6 Wait's Act. and Def., 583; Shearm. & Redf. on Neg., secs. 25, 37, chap. 3; Whart. on Neg., chap. 9; Dix v. Brown, 41 Miss., 131; Earhart v. Youngblood, 27 Pa. St., 331.

11.   The verdict of the jury is excessive, because it was proved by the plaintiff himself that he was living in Brenham, only nineteen miles from his sister, or a ride of only forty-five minutes, and that he had not visited his sister Emma for about three months before her death, though he testified that he was expecting to hear of her death at any moment, and could easily have obtained the permission of his employer to visit her.

*Searcy & Garrett* and *S. G. Ragsdale*, for appellee.—1. (1) Pain of mind, anxiety, and all forms of distress peculiar to a sentient being have been held elements of actual damages in cases like the present, and it was proper for the court to let the fact of appellee's being grieved and distressed at not being able to be present at the funeral of his sister, to comfort by his presence his aged mother, together with the other facts in the case, go to the jury, and it was for the jury to say, from all of the facts, what damages, if any, the appellee had sustained by reason of the negligence of appellant in failing to transmit and deliver the message promptly.

(2)   The court in its charge to the jury limited the right of appellee to recover to such actual damages as would naturally arise out of a violation of the contract to send the telegram with reasonable dispatch. Stuart v. Telegraph Co., 66 Texas, 584; So Relle v. Telegraph Co., 55 Texas, 310; Railway v. Levy, 59 Texas, 544; Shearm. & Redf. on Neg., 605.

2.   (1) The stipulation relied on by appellant was an attempt to relieve itself from liability for the negligent acts of its agents and employes, and was against public policy and void.

(2) The right of appellant to restrict its responsibility is restricted to such stipulations as are needful to guard against errors incident to the

nature of the business, *e. g.*, errors in transmission due to electrical disturbances, and does not extend to shelter it from breaches of contract or from responsibility for losses due to the negligence of its agents and employes.    Telegraph Co. v. Broesche, 72 Texas, 657; Telegraph Co. v. Neill, 57 Texas, 283; Telegraph Co. v. Tyler, 47 Ill., 17; Telegraph Co. v. Fenton, 52 Ind., 1–6.

3.    (1)    It is the duty of the telegraph company to have a sufficient number of wires, etc., to promptly do the business intrusted to them by the public.

(2)    Having accepted the message and undertaken to transmit the same, it was the duty of the company to do so promptly and without delay.

(3)    The appellant having received the message and failed to transport it promptly, the burden of proof was on the appellant to show that the delay was from causes which human agencies could not prevent.

(4)    The question of negligence was one for the jury to determine from all the evidence under proper instructions from the court.    Stewart v. Telegraph Co., 66 Texas, 580; So Relle v. Telegraph Co., 55 Texas, 313; Telegraph Co. v. Broesche, 72 Texas, 658; Telegraph Co. v. Fenton, 52 Ind., 1–6; Telegraph Co. v. Tyler, 74 Ill., 168.

4.    Telegraph companies exercise a public employment which imposes upon them duties to the public, and they can not by contract relieve themselves from liability for the negligent acts of their agents and employes.    Railway v. Levy, 59 Texas, 548, 549; Telegraph Co. v. Neill, 57 Texas, 283; Telegraph Co. v. Broesche, 72 Texas, 657; Telegraph Co. v. Fenton, 52 Ind., 1–6; Telegraph Co. v. Tyler, 74 Ill., 170–172.

5.    Where the general nature of the telegraphic communication is plainly disclosed by its terms, the sender is not required to communicate to the operator the relationship of the parties concerned.    If the operator desires information about such matters he should make inquiry.

6.    The question of damages was one exclusively for the jury, and they having assessed the same under a full and fair charge, this court should not disturb their finding.    Telegraph Co. v. Adams, 75 Texas, 534; Telegraph Co. v. Feegles, 75 Texas, 537; Telegraph Co. v. Moore, 76 Texas, 66; 3 Ct. App. C. C., sec. 43; 2 Ct. App. C. C., sec. 645; 3 Suth. on Dam., secs. 310, 311; Tuttle v. Turner, 28 Texas, 776; Railway v. Boehm, 57 Texas, 155; Railway v. Casey, 52 Texas, 124; Railway v. Johnson, 76 Texas, 436; Railway v. Overheiser, 76 Texas, 440, 441; Railway v. Jones, 75 Texas, 154, 155.

MARR, JUDGE.—The first assignment of error relates to the refusal of the court below to quash the citation.    In this action of the court we find no error.    The citation required the defendant itself to appear and defend the suit—not its agent, as claimed by the appellant.

The second assignment of error questions the refusal of the defendant's application for a continuance. The court did not err in overruling it. The citation was served on the defendant's agent upon the 14th day of February, 1890, yet no interrogatories were filed to be propounded to the witness, who resided in Galveston County, until the 10th day of March of that year, and which was the day when the case was tried. The District Court had convened on the 3d of March and the case was on the 7th set down for trial on the 10th.

Clearly appellant made no sufficient showing of diligence, under these circumstances, as would entitle it to a continuance as a matter or right.

The third assignment, that "the court erred in overruling defendant's special exception wherein it demurs to plaintiff's petition in that he seeks to recover damages, because plaintiff was not present to give comfort and consolation to his aged mother, as this was an injury suffered by the mother and can not be recovered in an action by the plaintiff, her son," can not be considered, because we fail to find, after diligent search, any order of court or bill of exceptions showing that the same was ever called to the attention of the court, or that it in fact made the ruling complained of. We may remark, however, that the petition only sought to recover damages for the injury done to plaintiff himself, not for the effect of his absence upon his mother, and the court below was careful to instruct the jury to confine the damages to the injury sustained by the plaintiff himself. While this particular portion of the petition was not in so many words referred to in the charge of the court, still the defendant omitted to request a special instruction to eliminate this matter from the consideration of the jury, even if it may be supposed that they considered it at all. We are by no means certain, in any event, that it was not a proper element of damage confined as it was entirely to the injury to the plaintiff himself.

The fourth and seventh assignments of error may be considered together, as they relate to the same subject, viz., the refusal of the court to give the third and fifth special charges requested by the defendant. The first of these instructions is as follows:

"You are charged that the defendant can limit its liability in transmitting telegraph messages, sending them under certain conditions, which conditions must be assented and agreed to by the sender of the message. The company may limit its liability for delay caused by inability to work its wires from wire troubles or overcrowding of the wires; and if you find that the message in question was written on a form containing a condition that the company would not be liable *for delays arising from unavoidable interruption in the working of its lines,* and said message was agreed to by the plaintiff by his agent writing the message on a blank containing said condition and signing the same, then the company is not liable for any delay caused by the interrup-

tion in the working of its lines, if you find that there was any such in-
terruption, and you will so find.''

The second is to this effect: ''The defendant company being a tele-
graph company, can limit to a certain extent its liability; and if you
find that the message in question was written on a blank containing
certain conditions, among others that the company would not be liable
in damages beyond fifty times the amount paid for sending the same,
without the delay is caused by the misconduct, fraud, or want of due
care on the part of the company, its servants or agents, and if you so
find you will return verdict for plaintiff only for fifty times the amount
paid for the transmission of the message in question.''

It is doubtful if these assignments ought to be considered.   We have
searched the record in vain for the proof of any fact or state of facts
that would render either of these charges applicable, even if it were
conceded that they announce the correct rule of law.   By nearly all of
his witnesses the plaintiff proved the contents of the telegram upon
which this action is based, viz., ''Emma died last night; will be buried
this evening,'' as we have before shown, but here the evidence stops,
and as to any part of the telegram or its conditions, if any, we find no
proof in the statement of facts.   The stipulations claimed by appellant
as limiting the liability of the company we do find in the telegram as
set out and made an exhibit to defendant's answer, but it does not ap-
pear that the defendant ever offered or attempted to offer them in evi-
dence before the court or jury.   The telegram is identified by several
witnesses as the one sent to the plaintiff, but no mention is made of any
other terms or conditions.   The nearest approach thereto that we have
been able to find is to be found in the testimony of August Grabbo, the
man who wrote the telegram: ''I took the message to Smith, the op-
erator, at the request of August Schoppe.   That is the message [identi-
fying message attached to defendant's answer] and my handwriting.''
This certainly does not prove the printed stipulations of the telegram
relied on by the defendant, or that they were offered or introduced in
evidence.   We think it entirely clear as a matter of practice and of
law that the identification of a written instrument for the purpose of
introducing it in evidence is not equivalent to its introduction in evi-
dence in fact before the court and jury.   This is perhaps an inadvertent
omission in the preparation of the statement of facts, but nevertheless
the proof does not appear to have been made.

We have, however, considered the charges under the facts of the case,
in view also of the sixth assignment, which raises in substance the same
question presented by the fourth assignment, as to the sufficiency of
the evidence in that regard to justify the verdict, but we do not believe
that any of these assignments are well taken in the light of the evidence
and issues in this case.   The court below seems to have sufficiently

guarded in its general charge to the jury, as we think, every right of the defendant on the question of negligence as an indispensable prerequisite to any recovery by plaintiff at all. The court charged the jury as follows:

"The question of diligence is one to be determined by the jury from all the evidence; and if you believe from the, evidence that the defendant's agent was not guilty of negligence, but that he exercised reasonable care and diligence in getting said message through, then you will find for the defendant." Railway v. Miller, 79 Texas, 78; 21 Am. and Eng. Corp. Cases, 80.

Again: "The defendant would be bound to receive the telegram, if such was intrusted to its care, and transmit the same with *reasonable* diligence, and would be held to the exercise of such care and diligence as would be *reasonably* adequate to a faithful discharge of its duty."

Elsewhere in the charge the right of the plaintiff to recover is made directly to depend upon proof of negligence upon the part of the defendant or its agents and employes. This did not make it liable, as a common carrier would be, as an insurer. It therefore clearly appears that the fifth special instruction as asked by defendant was inapplicable—certainly unnecessary to any issue submitted to the jury or presented in the plaintiff's petition, since according to both the terms of the stipulation itself and the requested instruction the amount of damages were not to be restricted to "fifty times the amount paid," if "the delay" was attributable to the "want of due care on part of the company, its servants, or agents." Had the stipulation not contained this latter exception it would have been unreasonable and void. Telegraph Co. v. Neill, 57 Texas, 283, approved in several later cases.

The stipulation contained in the third special instruction, before noted, that "the company will not be liable for delays arising from unavoidable *interruption* in the *working* of its lines," does not, we think, fairly embrace the matter developed in the evidence as the defense. The "interruption" mentioned would most naturally refer to such as may be caused by electrical disturbances or others beyond the control of the defendant. Telegraph Co. v. Edsall, 63 Texas, 674. The fact that the defendant's wire was, on the day the telegram was delivered to it for transmission, in the *uninterrupted* control and use of the railway company, does not indicate any "unavoidable interruption in the working of its lines," or fall within the terms of the stipulation. It appears to us that to give the stipulation the construction contended for by appellant would render it unreasonable and void if it is designed to have general application. Gray's Com. by Tel., p. 79, sec. 50; 8 Am. and Eng. Corp. Cases, pp. 1, 44, notes. Of course we are not discussing any supposed case—not shown to have influenced the defendant in this case—where to prevent collisions, wrecks, etc., the railway company should, for the time being, be allowed the exclusive use of the wires.

On the Sabbath day in question, if we are to credit the operator to whom the message was intrusted, and who was the agent of both the defendant and the railway company, the Western Union Telegraph Company seems to have abandoned its franchise and gone out of business between the towns of Burton and Brenham—at least for that day— and turned over "its lines" to the exclusive dominion of a train dispatcher (at Galveston) of the railway company, and who, thus invested with autocratic powers often craved perhaps by ordinary mortals but rarely possessed, appears to have done a "rushing" business and worked the wire for all that was in it, to the utter exclusion of the public. Under such circumstances it would be a little difficult to regard the railway company in the light, strictly, of an employer of the defendant company. This would seem also to meet the point made by the appellant that it could not give preference to any person or corporation employing it. It certainly did on that day, however, give a decided and exclusive preference to the railway company.

We do not think the law contemplates that a telegraph company, charged with the duty of faithfully serving the public to all reasonable extent, shall escape responsibility for its failure to perform that duty by such a shallow pretense after it has received the telegram and made a contract for its transmission. If it was the habit, not infrequently, as the testimony of the operator shows, for the railway company to usurp the defendant's wire with its consent, to the exclusion of every one else, then the defendant should have provided another wire to serve the public, or as many as were "reasonably adequate" to the discharge of the duty devolved upon it from the very nature of its organization and business. Telegraph Co. v. Scircle, 10 Am. and Eng. Corp. Cases, 616; Railway v. Smith, 63 Texas, 327. If it failed to do this, that amounted to negligence under such circumstances, regardless of any special stipulation. We do not wish to be understood as holding that it is the duty of telegraph companies to provide as many wires as may be necessary to serve every individual, promptly and at once, who may seek its service, but we do simply hold under the facts of this case that if the telegraph company allowed the railway to occupy its only wire for any considerable time to the exclusion of the public, then it should have provided another wire for the use of other employers so as to afford equal or at least reasonable facilities to all. Gray's Com. by Tel., 79; The State v. Telephone Co., 8 Am. and Eng. Corp. Cases (Neb.), 1. Since the omission now complained of occurred, the company has put up another wire, and thereby apparently confesses that one only was inadequate.

This court in the case of the Western Union Telegraph Company v. Broesche, 72 Texas, 654, administered a timely admonition to the appellant on account of the negligence of its agent at this very same Bur-

ton Station in allowing its office to be closed, so that an important telegram received there was not delivered in a reasonable time. ˙ It was held that although the message was received for transmission at the initial office "after the usual hours of closing the office at Burton," this constituted no defense to the action.    We do not doubt the correctness of this decision, or that the principle therein announced—that having received the telegram it was bound to transmit it—is appli-̇ cable to the present contention.    In any event the court was not required to select the isolated facts relied on by the defendant and charge that they, *per se,* constituted a legal excuse.    Munn v. Illinois, ·94 U. S., 113.

The remaining portion of the sixth assignment not already disposed of relates to the effect of the regulation of the company that its office would "not be open from 10 a. m. until 4 p. m. on Sunday," as testified to by the witness Smith, of which regulation the sender was informed.    The message, however (and which is termed a "rush message"), was in fact received by the agent for transmission about 8 o'clock in the morning, before the operation of the rule began.    The court below gave the sixth special charge requested by defendant, to the effect that the defendant would not be liable for any delay occurring between those hours if the sender was informed of the regulation. This was certainly as favorable a presentation of the law on this subject as the appellant could legally demand under the facts of the case. It is evident that the telegraph company was not observing the Sabbath, but on the contrary allowed its wire to be kept red hot, at least in ·the transmission of the railway's business during the greater part of the entire day.    The law beneficently endows telegraph companies with incapacity to violate the Sunday law by "sending and receiving telegrams" on that day, and not at the instance of the railroad alone. Gen. Laws, Reg. Sess., 18 Leg., 67; Telegraph Co. v. Yapst, 25 Am. and Eng. Corp. Cases, 519.    The verdict of the jury is not against the evidence in this particular.

What we have already said disposes of the fifth assignment of error.

The eighth assignment of error, that the court erred in refusing the fourth special charge asked by defendant, to the effect that the telegram must, to be actionable for consequential damages, show on its face the *relationship* that existed between "Emma," the deceased, and the plaintiff, can not be sustained under repeated decisions of the Supreme Court.    The same question is presented in the ninth assignment on the sufficiency of the evidence to sustain the verdict.    If the importance of the telegram being promptly transmitted and delivered reasonably appears from its terms, that is sufficient, whether the precise relationship is indicated or not; but it may be remarked that a telegram very similar to the present one, viz., "Billie is very low, come at once,".

was held to sufficiently give notice of the relationship, or at least to put the company on inquiry. Telegraph Co. v. Moore, 76 Texas, 66; Telegraph Co. v. Adams, 75 Texas, 533; Telegraph Co. v. Feegles, 75 Texas, 537. To require the family pedigree to be inserted in telegrams announcing serious illness or death would deprive the greater part of the public of the benefits of telegraphy; and the only apparent object of the requirement of detail in such cases is, as was said by the Supreme Court of Illinois in regard to the "repeating" of messages to insure *delivery*, "to increase the revenue of the companies." Telegraph Co. v. Tyler, 74 Ill., 170.

We do not think under the facts of the case that the first special charge asked by the defendant and refused by the court, and which is made the basis of the eleventh assignment, ought to have been given under the facts and issues in the case. The plaintiff did not claim nor rely upon any delay or other act of the company prior to the delivery of the telegram for transmission. The delay of his relatives or friends in not sooner delivering the telegram to the company—in other words, on the day preceding—was therefore irrelevant and not an act of the plaintiff contributing to the failure of the defendant, or to the injury.

At last it now only remains to dispose of the twelfth assignment of error—the tenth having been omitted from the brief of appellant. This assignment claims that the verdict of the jury is excessive in amount. We are unable to so hold. We have given in the synopsis most of the evidence on this subject, and it can not surely be said that the verdict is without evidence to support it or against the great preponderance of the testimony. Under a system of jurisprudence where the jurors are made the *sole* judges of matters of fact, they are as independent in their sphere in legal contemplation and presumably as fair and honest as the judge on the bench. Where their power is thus made by law *exclusive*, some proof of a satisfactory nature ought to be furnished that they were influenced by passion or prejudice or other improper motive in rendering their verdict before the power of the court to annul the verdict for these reasons could be lawfully exercised. Even when a verdict is very large in amount, that affords at best but a *suspicion* of improper influence. But in this case the amount awarded is not unreasonably large, nor indeed so great as in many other cases where the verdicts were sustained. Some of these cases we have cited already, many others may be found in the reports.

We can not therefore hold that the verdict of the jury was influenced by any improper motive in assessing the amount of the damages, although the effect of the verdict may be, as said in the able argument for the appellant, to allow the plaintiff "to coin his tears into silver dollars." The court below carefully instructed the jury to allow no

damages against the appellant as a penalty, nor to the plaintiff on account of "sorrow for the loss of his sister."

We conclude that the judgment ought to be affirmed.

*Affirmed.*

Adopted March 24, 1891.

*Stewart & Stewart* argued a motion for rehearing for appellee. Motion transferred to Austin and there refused.