### WESTERN UNION TELEGRAPH CO. v. ALEXANDER et al. (No. 104.)

(Court of Civil Appeals of Texas. Beaumont. April 20, 1916. Rehearing Denied July 3, 1916.)

TELEGRAPHS AND TELEPHONES ⬳71—EXCESSIVE DAMAGES—FAILURE TO DELIVER TELEGRAM ANNOUNCING DEATH.

In action against telegraph company, a verdict of $975 is not excessive, where a telegram announcing death of addressee's favorite brother was not delivered, causing her to miss his funeral, which she had made prior arrangements to attend, and addressee lived within speaking distance of the telegraph office, and the company was so advised by the sender of the telegram.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 74; Dec. Dig. ⬳ 71.]

Error from Polk County Court; B. F. Bean, Judge.

Action by Sleetie Alexander and another against the Western Union Telegraph Com-

pany. Judgment for plaintiffs, and defendant brings error. Affirmed.

F. J. & C. T. Duff, of Beaumont, for plaintiff in error. Campbell & Campbell, of Livingston, for defendants in error.

MIDDLEBROOKE, J. This was a suit instituted by Sleetie Alexander, joined by her husband, Sandy Alexander, in the county court of Polk county, Tex., on the 21st day of May, 1915. Plaintiff alleged in the petition, in substance:

That on September 28, 1914, and prior thereto, they lived in Sour Lake, Tex.; that James Hall, a brother of Sleetie Alexander, died at Moscow, Tex., in Polk county, on September 27, 1914; that on the 28th day of September, Joe Hall, a brother, sent a telegram to Sleetie Alexander, reading as follows:

"Moscow, Texas, 9—28—14.
"Sleetie Alexander, Sour Lake, Texas. James died seven o'clock last night. Come at once. Answer.                     Joe Hall."

That the telegram was never delivered to Sleetie Alexander, although she resided very near the telegraph company's office in Sour Lake; that the plaintiff in error negligently and willfully failed and refused to deliver the telegram, and that thereby she was deprived of attending the funeral of her brother, and being present with her family in her bereavement; that in consequence she has suffered great mental anguish, to her damage in the sum of $975. They allege, further, in their petition, that if the message had been delivered she would and could have gone to Moscow and have been present at the burial of her brother,

The defendant, plaintiff in error, answered by original answer filed on August 1, 1915, demurring generally to plaintiffs' petition; also filed general denial, and specially pleaded contributory negligence on the part of the sender of the message in not giving plaintiff in error sufficient information as to where or how defendant in error could be located; that it used due diligence to locate Sleetie Alexander, but on account of the negligence of the sender of the message was unable to do so; and that the defendant mailed to the plaintiff a card advising her that the message was in the office, and for her to call for same, which she failed to do.

Plaintiff filed replication to this answer, denying same generally, and specially pleading that at the time of the delivery of the message to defendant for transmission, Joe Hall, the sender of the message, told defendant's agent that Sleetie Alexander was a sister of the deceased, and lived within speaking distance of the telegraph station at Sour Lake. The case was tried before a jury on the 25th day of October, 1915, resulting in a verdict for the plaintiff in the sum sued for, $975. Motion for new trial was duly filed, and the same was overruled by the trial court, proper exceptions were reserved, and the case is now properly before this court for review.

Plaintiff in error's first assignment of error is:

"Because the verdict of the jury is so excessive and unreasonable in amount as to show prejudice on the part of the jury."

Its second assignment is:

"The verdict of the jury is not supported by and is against a preponderance of the evidence, in that, although the plaintiff swore that her failure to be at her brother's funeral nearly killed her, yet the record discloses that: (1) The plaintiff, although she knew her brother was sick and dying for a period of three months, and that although she had the means and ability to go to him, she did not do so. (2) That plaintiff had not seen or been with her brother for a period of three years before his death. (3) That plaintiff's mental anguish, if any, was produced by regret at not having gone to her brother before his death, and not by reason of her failure to be present at his burial.

It is admitted by the defendant that a train leaving Sour Lake for Houston not later than 9 a. m. on September 28, 1914, would have made connection with the train of the Houston, East & West Texas at Houston, which was due to arrive in Moscow about 11 at night. It is also admitted that 25 minutes would have been a reasonable time for the transmission of the message in question from the Moscow office to the telegraph office at Sour Lake.

It is not necessary to set out at length the statement of facts in this case, for a proper consideration thereof, under the assignments of error presented to this court. Suffice it to say that the facts show that the plaintiff Sleetie Alexander suffered great mental anguish on account of not having the privilege of attending her brother's funeral. The facts show also that her brother was afflicted with tuberculosis, and had been for some time; that her brother, some time previously, had lived in Louisiana, but had moved from Louisiana to Moscow, and at the time he moved back to Moscow Sleetie Alexander was living in Moscow; that she left Moscow and came to Sour Lake about three months before her brother's death. Plaintiff in error, in its brief, states this time to be three years, but we are sure that this is a clerical error. The undisputed facts show that she was with her brother about three months before his death. They show, also, that she had made arrangements with her brother to telegraph her if her brother should die, in time for her to be present at the funeral, and that she had also made arrangements with a Mr. Hudson, for whom she cooked, in case she should get word of her brother's death at an hour of the day that would preclude her taking passage from Sour Lake to Beaumont on a regular train, so as to make connection that would enable her to reach her brother in time for burial, to take her in his automobile to Beaumont to make connection. She testified, also, that deceased was her favorite brother, and if the message

had been delivered to her with reasonable dispatch she could and would have gone to her brother's funeral, and it is also shown that from the time of receiving the message after her brother's death, if it had been promptly delivered, she could have made connection on the railroad, so as to have been in Moscow about 11 o'clock, before her brother was buried the next afternoon. It shows, also, that her brother who sent the message went to the telegraph operator several times and asked as to whether he had an answer, and that the funeral was delayed until all of the trains had passed that she could have reached Moscow on at any time during the afternoon of her brother's burial, and it shows, also, that her brother who sent the message met the night train, expecting her to arrive on it. The telegraph operator at Sour Lake put the message in the hands of a negro porter or message boy for delivery, and he testified that he went to numerous persons and places, the post office, hotels, and one place and another, trying to locate Sleetie Alexander, and could not do so. The testimony also shows that Sleetie Alexander did live within speaking distance of the depot, the distance being determined at approximately three times the distance of the width of the courthouse, and it was agreed that the width of the courthouse was 65 feet.

Plaintiff in error's counsel presents a most forceful argument in his brief; but, under our view of the case, his assignments of error are not well taken. He cites Western Union Telegraph Company v. Holcomb, 175 S. W. 750, as supporting his contention in his first assignment of error. An inspection of that case shows that the following message was sent:

"'Mt. Pleasant, Texas. March 18, 1911. Fate Hawkins, De Leon, Texas. Brother Jess sick. No chance for him. Come at once. [Signed] Lena Raney.' Lena Raney was plaintiff's sister, and she and her brother, Jess Holcomb, lived in the country about nine miles from Mt. Pleasant, Plaintiff resided in the country near Downing, a small town about eight miles from De Leon. A telephone line connected De Leon and Downing, and a telephone line ran from Downing to plaintiff's residence. A person at De Leon could talk to plaintiff at his residence over the telephone, but in order to do so it was necessary to call for him at the Downing exchange, from which station direct connection could be made between plaintiff's residence and De Leon. Jess Holcomb died at 4 o'clock on the afternoon of March 19th, and was buried near his home at 4 o'clock on the afternoon of March 20th. The telegram was delivered to plaintiff at his home by telephone from defendant's office at De Leon on the morning of March 20th, too late to enable him to attend the burial."

In passing upon that case, Justice Dunklin, writing the opinion, says:

"By another assignment it is insisted that the judgment, which was for the sum of $1,000, was excessive. According to plaintiff's testimony, he moved from Titus county to Comanche county in the year 1904. During the time plaintiff lived in Titus county, Jess Holcomb, his brother, lived with him until the latter married, and then lived about a mile and a half from plaintiff's residence. Plaintiff further testified: 'I suppose Jess had been married about a year and a half when he left Titus county. No; Jess was not my youngest brother. Jess was 27 years old when he died. I regarded my brother Jess very highly as a brother. He and I were always very friendly. It had been something like four years at the time my brother died since I had seen him. * * * When I found out I could not see my brother in his lifetime, and then could not even attend his funeral, I could hardly describe my feelings. I felt mighty bad, and was hurt badly over it.' He further testified that he made no effort to have the burial postponed in order to enable him to attend the funeral; that he could have taken a train on Monday afternoon and reached his brother's home the following morning at about 4:40 o'clock; that his brother did not have any one to write him of his illness; that he had never been to Mt. Pleasant since his brother's death. We recognize the rule that the amount of damages to be awarded in such case as this is to be determined by the jury, and that the verdict will not be disturbed unless clearly excessive. Further, we are not unmindful of the rule that the facts of each case must be the guide in determining the amount of damages to be awarded; but we are of the opinion that the facts detailed by the plaintiff himself clearly do not warrant the amount of damages awarded."

The evidence in that case showed also that the telegram was carelessly delayed and that it reached the plaintiff too late for him to get passage that would enable him to reach his brother's home in time for the funeral. The distinction between that case and the instant case is: The undisputed testimony in the instant case shows that Sleetie Alexander could and would have attended her brother's funeral if the message had been promptly delivered, and she was so anxious to be in position to attend her brother's funeral that she had prearranged to be able to do so, regardless of train service from Sour Lake to Beaumont.

In the case of Western Union Telegraph Company v. Johnson, 171 S. W. 859, as we understand it, that case was decided from the standpoint of "his action for mental anguish under the law of Arkansas will not lie for the failure to deliver an interstate message," and is not applicable to the instant case, and the case of Southwestern Telegraph, etc., Company v. City of Dallas, 174 S. W. 636, which is a case in which a suit was brought for a reasonable sum for inspection of telegraph posts, etc., for $2 per post, under ordinances under special charter of the city of Dallas, and in that case a judgment was rendered against the telegraph company for the amount sued for, $2 per post, and the question of excessive damages was properly raised by the appellant, and was overruled by the court; the judgment being affirmed.

In Western Union Telegraph Company v. Rosentreter, 80 Tex. 406, 16 S. W. 25, the Supreme Court, answering an assignment in point with the assignment in the instant case, in which a judgment was secured for $1,000, says:

"At last it now only remains to dispose of the twelfth assignment of error. * * * This assignment claims that the verdict of the jury is

excessive in amount. We are unable to so hold. * * * Under a system of jurisprudence where the jurors are made the sole judges of matters of fact, they are as independent in their sphere, in legal contemplation, and presumably as fair and honest, as the judge on the bench. Where their power is thus made by law exclusive, some proof of a satisfactory nature ought to be furnished that they were influenced by passion, or prejudice, or other improper motive, in rendering the verdict, before the power of the court to annul the verdict for these reasons could be lawfully exercised. Even when a verdict is very large in amount, that affords at best but a suspicion of improper influence. But in this case the amount awarded is not unusually large, nor, indeed, so great as in many other cases where the verdicts were sustained. * * * We cannot, therefore, hold that the verdict of the jury was influenced by any improper motive in assessing the amount of damages, although the effect of the verdict is, * * * as said in the able argument for the appellant, to allow the plaintiff 'to coin his tears into silver dollars.' "

In the case of Western Union Telegraph Company v. McDavid, 121 S. W. 893, a judgment was secured by the plaintiff in the sum of $1,350. The facts are very similar to the instant case, and the appellate court, in passing upon an assignment that the damage is excessive, says:

"There is no fixed rule for measuring the damages to be allowed in such cases, owing to the varying conditions and circumstances, and the jury being the exclusive judges of the facts, it must clearly appear that the amount allowed is excessive before this court would be authorized to disturb their verdict upon that objection. We have carefully examined the evidence, and, while the amount of the verdict seems somewhat large, we cannot say that it is excessive"—citing Telegraph Co. v. James, 31 Tex. Civ. App. 503, 73 S. W. 79; Telegraph Co. v. Houghton, 26 S. W. 448; Telegraph Co. v. Piner, 9 Tex. Civ. App. 152, 29 S. W. 66, and many other authorities.

We have carefully considered all of the authorities cited in appellant's brief, as well as the able argument presented by counsel for appellant; but we do not think, as a matter of law, that the damages under the facts and surroundings of this case can be said by this court to be excessive. The first assignment of plaintiff in error is therefore overruled.

The second assignment of error is really nothing more or less than a reassertion of the first assignment of error in different form and verbage, and is answered by our disposition of the first assignment of error. We do not think as a matter of law that the verdict and judgment in this cause is excessive, and the judgment of the lower court is affirmed.

Affirmed.